UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REAL TIME RESOLUTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CAUSE NO. 3:16-cv-00608-L |
| | § | |
| SPECIALIZED LOAN SERVICING LLC, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO MOTION TO COMPEL**

Plaintiff/Counter-Defendant Real Time Resolutions, Inc. ("Plaintiff" or "RTR") files this *Reply to Defendants' Response to Motion to Compel* (the "Reply"), showing as follows:

## I.   SUMMARY OF ARGUMENT

Defendant/Counter-Plaintiff Specialized Loan Servicing ("SLS") has made an "initial" production of some responsive documents, but the production is undisputedly not "complete." SLS has not produced numerous responsive, non-privileged documents and communications addressing material issues in this lawsuit. The Court should compel SLS to produce, among other materials, the following: (1) the remainder of its internal communications (*see* RFP 5); (2) documents and communications between SLS and Assured Guaranty Corp. ("Assured") (*see* RFPs 6, 27); (3) SLS's policies and procedures addressing inbound and outbound transfers of loans (*see* RFP 31); and (4) SLS's contracts with other vendors and particularly with DiTech Financial LLC f/k/a Green Tree Servicing ("Green Tree") (*see* RFP 28). Further, because SLS does not appear to challenge RTR's Motion to Compel SLS's Objections and Responses to Interrogatories, the Motion to Compel

pertaining to them should be granted to the extent SLS has not otherwise removed the challenged objections.

## II.   ADDITIONAL FACTUAL BACKGROUND[1]

1. SLS produced no documents before RTR filed its Motion to Compel.

2. On September 29, 2016 – the deadline for filings its Response to the Motion to Compel – SLS produced 3,927 pages of documents.

3. To date, SLS has not provided a privilege log as required by Federal Rule Civil Procedure 26(a)(5)(A). This is so even though SLS contends some of its objections are "on privilege" grounds. Resp. (Doc. 20) at 2.

4. By contrast, RTR has produced 4,957 pages of documents to date. On August 19, 2016, RTR provided SLS with an 81 page Privilege Log detailing the documents and communications that it has withheld on bases of privilege.

5. On July 28, 2016, Judge Lindsay issued an *Agreed Protective Order* governing the parties' exchange of discovery. *See* Doc. 13. The parties' Agreed Protective Order, by agreement, contains "Confidential" and "Attorneys' Eyes Only" levels of confidentiality designation. *Id.*

6. Through its Response, SLS *acknowledges* that its production is incomplete. *See* Resp. (Doc. 20) at 2 *("[o]nce* SLS's production is complete" and "*[u]ntil* SLS completes its production.") (emphasis added).

## III.   ARGUMENT AND AUTHORITIES

**A.   The Court Should Compel SLS's Remaining Internal Communications and also SLS's Remaining Communications Concerning the Notice of Non-Extension of Term dated December 31, 2015.**

---

[1] These facts update the Court about events transpiring primarily after RTR filed its Motion to Compel.

SLS has produced approximately 20 pages[2] of internal communications by SLS employees and agents (excluding communications with SLS's external attorneys concerning legal advice) relating to its Collection Agreement with RTR and the loans collected by RTR. *See* Mot. to Compel at RFP 5 (Doc. 15-3 at 170). It is undisputed that SLS has not produced many responsive e-mails sent and received by its officers. Instead, SLS appears to have limited its search to the e-mails sent to RTR by Amanda Darby, its General Counsel. With the exception of one e-mail, the internal communications produced thus far appear to be printed from Ms. Darby's inbox.

SLS's deficient production indicates that SLS has not produced the vast majority of e-mails by and among its executives addressing material topics in this case including the Collection Agreement, the purported termination notice, and the purported end of term notice. These e-mails are relevant and should be compelled. They speak to the various notices sent by SLS to RTR as well as to whether the Collection Agreement has been terminated. *See* Pls' Orig. Pet. ¶¶ 11-22.

RTR requests the Court to compel SLS to produce all non-privileged documents and communications responsive to Request for Production No. 3[3], including responsive e-mails to or from the following officers of SLS who are custodians of relevant information:

| **RTR Document Custodian** | **Relation to Material Issues in Lawsuit** |
|---|---|
| John Beggins | CEO of SLS at time of Collection Agreement and most events underlying lawsuit. |
| Toby Wells | CFO of SLS at time of Collection Agreement and most events underlying lawsuit. |
| Mark Volosov | Transaction Management for SLS at time of Collection Agreement and most events underlying lawsuit. |
| Ali Haralson | COO of SLS at time of Collection Agreement and most events underlying lawsuit. |
| Brian Skidmore | Vice President – Recovery for SLS at time of Collection Agreement and most events underlying lawsuit. |

---

[2] Including attachments.

[3] And to log all purported privileged communications as part of its yet-to-be-provided Privilege Log.

The following diagram depicts the incomplete status of SLS's current production with respect to the communications amongst SLS's executive officers concerning the Collection Agreement and RTR's collection of the loans:



Because each custodian referenced above sent and received communications that directly address material issues in this lawsuit, the Court should compel SLS to produce those communications and any attachments transmitted with them.

Similarly, although SLS objected to Request for Production No. 12, requesting "documents related to the Notice of Non-Extension of Term, dated December 31, 2015," it has produced a small number of responsive documents, though many more are believed to exist. *See* Mot. to Compel (Doc. 15-3 at 172). Documents and communications pertaining to SLS's notice of non-extension relate directly to the material issues of the notice sent by SLS to RTR and whether the Collection Agreement between RTR and SLS has terminated, which constitute the heart of RTR's claims and defenses. *See* Pls' Orig. Pet. (Doc. 1-3) ¶¶ 11-22.

### B. The Court Should Compel SLS to Produce Communications with Bond Insurers, including Assured.

There appears to no longer be a dispute that RTR is entitled to communications by and between SLS and any bond insurer, and specifically Assured. *See* Mot. to Compel. at RFPs 6, 27 (Doc. 15-3 at 170, 176). Assured is the bond insurer that, via subrogation rights, benefits from RTR's collection of the loans. SLS acquired from Bank of America the servicing rights attendant to the loans that RTR collects, and Assured consented to the transfer. As part of the Collection Agreement underlying this lawsuit, SLS assigned to RTR the right to continue collecting these loans. Because Assured has an economic interest in the loans, it has naturally discussed the Collection Agreement with SLS.

In 2016, SLS requested RTR's consent to provide a copy of the Collection Agreement to Assured, explaining that Assured had "pressured" SLS for the document. RTR consented to the disclosure, but RTR was not copied when SLS sent the Collection Agreement to Assured. On August 11, 2016, Assured indicated to SLS and RTR through the same writing that Assured intended to sell the loans RTR collected, and that Assured "expected" both SLS and RTR to cooperate with Assured to facilitate such a sale. RTR has no contractual relationship with Assured, and the sale of such loans by Assured may cause material harm to RTR.

SLS's "initial" document production in this case included two documents between SLS and Assured: (1) a "Set Aside Agreement" dated February 1, 2013 (SLS-RTR 946), and (2) a "Special Servicing Agreement" dated February 1, 2013 (SLS-RTR 949). RTR *never saw* the Special Servicing Agreement before its recent production. This Special Servicing Agreement between SLS and Assured instructs SLS to provide Assured "a copy of each material notice or other communication received or delivered by it" in connection with the loans RTR is collecting. It further instructs SLS to provide Assured with monthly loan level data, estimated cash flows, and other

documents relating to the loans that RTR collects, and also that SLS and Assured shall conduct quarterly conference calls.

RTR, as the assignee of the collection rights, *was never* made aware that Assured knew the terms of the Collection Agreement between SLS and RTR, and it *has never* seen any of the reports, data, disclosures, or notices that SLS has provided to Assured.

SLS did *not* produce any communications between SLS and Assured, *nor* did it produce any other documents between SLS and Assured. These missing documents and communications constitute the exact items that correspond to the Special Servicing Agreement that SLS did produce, and the documents and communications are responsive to Request for Production Nos. 6 and 27. Mot. to Compel (Doc. 15-3 at 170, 176). They are relevant because they contain information about the various notices sent by SLS to RTR and whether SLS and Assured believed the Collection Agreement's term had ended. *See* Pls' Orig. Pet. ¶¶ 11-22. They also will shed light on why Assured notified RTR and SLS that it intends to sell the loans. All of this information will develop RTR's claims and defenses. *See* FED. R. CIV. P. 26(b)(1).

Also important, during discussions between SLS and RTR and their outside counsel, SLS agreed to produce some of the communications and documents between SLS and Assured from at least the time period December 31, 2015 forward. These communications have yet to be provided.

### C.  The Court Should Compel SLS's Requested Policies & Procedures.

Although SLS produced hundreds of pages of *RTR's* policies and procedures as part of its document production, SLS has failed to produce its own policies and procedures relating to the inbound transfer and outbound transfer of loans. *See* Mot. to Compel. at RFP 31 (Doc. 15-3 at 177). SLS's policies and procedures relating to the inbound transfer and outbound transfer of loans are relevant, and the Court should compel their production, because they relate directly to the issue of

whether the Collection Agreement between RTR and SLS has terminated and the parties' obligations upon a purported termination. *See* Pls's Orig. Pet. (Doc. 1-3) at 22.

### D. The Court Should Compel the Contract and Related Documents Between SLS and Green Tree.

RTR should be permitted to discover the written agreement(s) between SLS, on the one hand, and Green Tree and/or other vendors, on the other hand, covering the servicing and/or collection of loans for or on behalf of SLS. *See* Mot. to Compel at RFP 28 (Doc. 15-3 at 176).

During a conference call, SLS indicated to RTR that SLS entered into a collection agreement with Green Tree for the collection of different loans, that the collection agreement had terminated, and that as a result of the termination, Green Tree had returned loans to SLS. As part of its Counterclaim in this lawsuit, SLS alleges that the Collection Agreement between RTR and SLS has terminated because an "end of term" notice was sent, and that RTR has failed to return the loans to SLS. *See* SLS's Ctr. Claim ¶¶ 8, 16 (Doc. 3 at 55.).

The collection agreement and related documents between SLS and Green Tree are relevant. The "termination" and "end of term" provisions contained within the collection agreement between SLS and Green Tree, as well as the attendant documents including notices sent by SLS to Green Tree and any consents by Assured, will evidence how SLS interprets the end of term and termination provisions in another collection agreement. Thus, the documents evidence SLS's course of dealing and will provide context for whether the Collection Agreement between RTR and SLS has terminated. *See* FED. R. CIV. P. 26(b)(b)(1). RTR believes that the Green Tree documents will show that SLS negotiated different "end of term" and "termination" language with Green Tree than it did with SLS, and that the difference in language explains why SLS was justified in receiving loans back from Green Tree, whereas with RTR it is not. The Green Tree collection agreement and documents are in SLS's possession, there is an Agreed Protective Order in place under which confidentiality

may be invoked and the documents protected, and SLS will incur no burden in producing them. *Cf. id.*

Accordingly, the collection agreement between SLS and Green Tree and attendant documents are relevant to RTR's claims and defenses, and the Court should compel production.

### E. The Court Should Overrule the "Vague and Ambiguous," "Legal Conclusion," and "Potential Party" Objections to RFPs 3 through 5.

SLS spends most of its Response addressing a few objections that appear to be limited to RTR's Requests for Production Nos. 3 through 5. SLS's "vague and ambiguous," "legal conclusion," and "potential party" objections lack merit and the Court should overrule them. It is readily ascertainable from the requested documents and communications themselves whether RTR is a party or potential party to the respective contract or is servicing the loan. Requests for Production Nos. 3 through 5 seek documents and communications relating directly to (1) the Collection Agreement between RTR and SLS; (2) how SLS has interpreted and treated its "termination" and "end of term" provisions; and (3) loans collected or to be collected by RTR. *See* Mot. to Compel (Doc. 15-3 at 169-170). The requests are narrowly tailored to the topics of collection agreements involving RTR and loans collected or to be collected by RTR.

### F. RTR's Motion to Compel Regarding the Interrogatories is Unchallenged.

SLS does not appear to challenge RTR's Motion to Compel SLS's Objections and Responses to Interrogatories, such that the Motion to Compel pertaining to them should be granted to the extent SLS has not otherwise removed the challenged objections.

## **PRAYER**

WHEREFORE, Plaintiff/Counter-Defendant Real Time Resolutions, Inc. respectfully requests the Court to grant its *Motion to Compel* in its entirety; to compel SLS to produce documents responsive to each of its requests and to overrule SLS's objections to same; to compel SLS to make full and complete responses to RTR's Interrogatories and to overrule SLS's objections to same; to award recovery of its costs and fees in seeking the relief requested; and for any such other and further relief, in law and in equity, to which it may be justly entitled.

Dated: October 11, 2016                     Respectfully submitted,

*/s/ Anthony A. Petrocchi*
Anthony A. Petrocchi
Texas Bar No. 15851700
tpetrocchi@petrocchilaw.net
ANTHONY A. PETROCCHI, P.C.
5127 Spyglass Drive
Dallas, Texas 75287
(214) 797-2049 (office)
(214) 594-8205 (fax)

*/s/ Jonathan R. Childers*
Michael P. Lynn
Texas Bar No. 12738500
mlynn@lynnllp.com
Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
Jonathan R. Childers
Texas Bar No. 24050411
jchilders@lynnllp.com

**LYNN PINKER COX & HURST LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: 214.981.3800
Facsimile: 214.981.3839

**ATTORNEYS FOR PLAINTIFF AND COUNTER-DEFENDANT REAL TIME RESOLUTIONS, INC.**

## CERTIFICATE OF SERVICE

      I certify that on October 11, 2016, a true and correct copy of the foregoing was served on all counsel of record via the Court's ECF system.

                                              */s/ Jonathan R. Childers*
                                              Jonathan R. Childers

4842-5077-3306, v. 1