IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REAL TIME RESOLUTIONS, INC., | § § | |
| Plaintiff, | § § | |
| v. | § § | CAUSE NO. 3:16-cv-00608 |
| SPECIALIZED LOAN SERVICING, LLC, | § § § | |
| Defendant. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

REAL TIME RESOLUTIONS, INC. ("RTR" or "Plaintiff"), Plaintiff in the above-styled and numbered cause, files this its Plaintiff's First Amended Complaint, complaining of Defendant SPECIALIZED LOAN SERVICING, LLC ("SLS" or "Defendant"), and showing as follows:

### I.
#### INTRODUCTION

1.  This dispute arises from the post-execution dissatisfaction of SLS with the terms of the loan servicing Collection Agreement that it negotiated with RTR and executed. In 2013, only three months after the ink had dried on the Collection Agreement, SLS sought to force RTR to transfer servicing rights for loans to which SLS was not entitled by attempting to invoke early termination provisions of the parties' Collection Agreement. Those opportunistic efforts were rebuffed successfully by RTR. Thereafter, SLS again made demand that RTR transfer those same rights, only this time SLS relies upon separate provisions permitting the parties to elect not to renew the term of the Collection Agreement if certain conditions occur. However, the express

language of the Collection Agreement precludes SLS from obtaining the servicing rights to loans transferred to RTR by the Prior Servicer of the loans, and RTR continues to perform collection services upon the loans at issue.

2. SLS has also restricted RTR's ability to perform its collection services in other ways. Specifically, SLS has instructed RTR to cease from taking actions that belong exclusively to RTR under the Collection Agreement, even though the Agreement does not grant SLS any consent right with respect to such activities, and even though those activities are authorized by the Collection Agreement. As a result, RTR has been unable to extract the expected and bargained-for value in performing its collection services.

3. As consequence, in addition to money damages, RTR seeks this Court to award it declaratory relief including that RTR maintains the exclusive right and authority to carry out the actions provided to it under the Collection Agreement despite improper attempts by SLS to restrict RTR's performance.

## II.
### PARTIES, VENUE, AND JURISDICTION

4. Plaintiff REAL TIME RESOLUTIONS, INC. is a Texas corporation which maintains its principal office in Dallas, Dallas County, Texas.

5. Defendant SPECIALIZED LOAN SERVICING, LLC is a Delaware entity which maintains its principal office in Highlands Ranch, Colorado. SLS has done business in Dallas County, Texas within the scope of TEX. CIV. PRAC. & REM. CODE ANN. §17.042, but does not maintain a place of business or an agent for service in the state of Texas. SLS has appeared herein.

6.   This suit was originally commenced by RTR's filing of its original petition on January 25, 2016, in the Dallas County Texas, District Court. On March 3, 2016, SLS removed this proceeding from that Dallas District Court, asserting diversity jurisdiction under 28 U.S.C. §1441 (*see*, DN 1 - Notice of Removal, ¶4).

7.   RTR does not contest the removal or venue and jurisdiction in this Court.

### III.
#### FACTUAL AND PROCEDURAL BACKGROUND

**A.   SLS improperly attempts to terminate the Collection Agreement.**

8.   Plaintiff RTR incorporates the above paragraphs by reference.

9.   As a part of its business operations, RTR provides loan collection services for its various clients. One of RTR's clients is a financial institution (the "Prior Servicer") for which RTR collects certain second lien residential mortgages, including a loan portfolio which is the subject of this proceeding. Pursuant to a 2008 collection agreement between RTR and the Prior Servicer, the Prior Servicer classified loans as Charged Off Loans and transferred those loans to RTR for collection. Among the rights given to RTR was the exclusive right to contact the borrowers associated with each such charged off loan. In December 2012, the Prior Servicer notified RTR that it intended to assign to SLS the Prior Servicer's servicing rights associated with those loans.

10.   In order to facilitate the continued collection of these previously transferred loans and to allow the subsequent transfer of future delinquent loans to RTR by SLS, RTR and SLS executed a Collection Agreement, dated as of February 1, 2013 (the "Collection Agreement"). The Collection Agreement contemplated that: (a) RTR would continue to collect the Charged

Off Loans previously transferred to RTR by the Prior Servicer; and (b) RTR would begin collecting additional new loans that SLS, as the new servicer, would thereafter transfer to RTR for collection.

11.     SLS never transferred any new loans to RTR for collection, and RTR has continued to collect the Charged Off Loans that had been transferred previously to RTR by the Prior Servicer.

12.     On April 26, 2013, less than three months after the Collection Agreement was executed, SLS sent to RTR a "Notice of Optional Termination of Certain Charged Off Loans" (the "SLS Termination Notice") stating in relevant part that, "Pursuant to Section 8.2(a) of the [Collection] Agreement, SLS hereby provides notice to [RTR] that it is terminating the Agreement with respect to the Charged Off Loans listed on Schedule 1 hereto (the 'Terminated Loans') effective June 1, 2013." There were approximately 8,000 Terminated Loans identified on the referenced Schedule 1. At that time, RTR was collecting approximately 15,000 loans pursuant to the Collection Agreement.

13.     Section 8.2 of the Collection Agreement provides as follows (emphasis added):

>     8.2     *Optional Termination*.  (a) This Agreement may be terminated without cause by the Servicer *with respect to any Charged Off Loan or all Charged Off Loans*, in either case, *transferred to the Contractor by the Servicerbrian [sic]*, on thirty (30) days written notice to the Contractor. In the event the Contractor receives timely written notice pursuant to this Section 8.2, the Contractor shall be entitled to reimbursement from the Servicer of:
>
>         (i)     all reasonable out of pocket expenses actually incurred in connection with the transfer of the Data to any successor contractor or to the Servicer;

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                                                                                                         Page 4

    (ii) reimbursement for any unreimbursed Ancillary Charges with respect to such terminated Charged Off Loans; provided that the Contractor has provided the Servicer with an itemized invoice detailing each such expense within thirty (30) days of the related termination; and

  (b) The Contractor may elect to terminate this Agreement by giving notice to the Servicer in the same manner espoused in Section 8.2(a).

  (c) In addition, upon ten (10) days prior written notice to the Contractor, the Servicer may terminate, at its sole option, this Agreement with respect to some or all of the Charged Off Loans with respect to which the Contractor has classified as in-active in its monthly report in accordance with Section 3.2 hereof.

14. The Collection Agreement defines Charged Off Loans as follows (emphasis added):

  1.4 **"Charged Off Loan"** shall mean each Loan designated by the Servicer or *any prior Servicer* as a Charged Off Loan in accordance with the provisions of the applicable PSA, or otherwise has been delivered to the Contractor by the Servicer *or any prior Servicer* for collection.

15. A plain reading of Section 8.2 of the Collection Agreement demonstrates that SLS's right to terminate and recall Charged Off Loans applies only with respect to a Charged Off Loan "transferred to the Contractor [RTR] by the Servicerbrian [sic] [SLS]."[1] Because the Charged Off Loans at issue had been transferred to RTR *by the Prior Servicer*, they were *not* transferred by SLS (the new servicer) and therefore cannot be subject to Optional Termination under Section 8.2 of the Collection Agreement.

16. RTR contested SLS' attempt to exercise the Optional Termination paragraph (¶8.2) of the Collection Agreement, ultimately filing a lawsuit in the 14th District Court of Dallas County, Texas, DC-13-06918-A. In late 2013 and early 2014, the parties engaged in discussions

---

[1] The "Brian" in "Servicerbrian" presumably refers to Brian Skidmore, SLS's Vice President of Recovery, who apparently reviewed the Collection Agreement prior to its execution.

in an attempt to resolve their dispute, during which time SLS effectively withdrew the SLS Termination Notice. The parties were able to resolve temporarily their respective disagreements, and the suit in the 14th District Court was dismissed for want of prosecution. After SLS withdrew its Termination Notice, RTR continued servicing the Charged Off Loans without protest by SLS, and RTR has fulfilled and continues to fulfill all of its obligations to SLS under the Collection Agreement.

**B.    SLS improperly attempts to non-extend the Collection Agreement.**

17.    On December 31, 2015, without any prior discussion, consultation or warning, SLS sent RTR a written notice that it would decline to extend the term of RTR's Collection Agreement beyond January 31, 2016 (the "SLS Non-Extension Notice") pursuant to SLS' interpretation of Section 8.1(a) of the Collection Agreement. Thereafter, SLS demanded the transfer of all Charged Off Loans that had been transferred to RTR by the Prior Servicer, not just the 8,000 loans that had been the subject of the previously rebuffed SLS Termination Notice.

18.    The SLS Non-Extension Notice fails based upon a plain reading of Sections 8.1(a) and (b) of the Collection Agreement. The provisions comprising Section 8 of the Collection Agreement – including Sections 8.1(a) and (b) – should be read together, as RTR does. Section 8.1(a) provides:

> 8.1.    <u>Term</u>. (a) This Agreement shall continue in full force and effect for an original term (the "Original Term") of one (1) year from the date hereof, unless terminated sooner by mutual agreement or otherwise in accordance with sections 8.2 or 8.3 of the Agreement. The Term of the Agreement shall automatically be extended for successive over one (1) year terms (each an "Extension Term") unless the Servicer delivers written notice to the Contractor or Contractor delivers written notice to the Servicer, at least thirty (30) days before the end of, as applicable, (a) the Original Term or (b) any Extension Term of their or its election not to extend the term.

19. Section 8.1(b) modifies Section 8.1(a). Section 8.1(b) provides as follows (emphasis added):

> [8.1](b) ***Notwithstanding the foregoing***, all rights and obligations of the Contractor and the Servicer hereunder with respect to ***a Charged Off Loan for which the Contractor is performing the Obligations at the time of the expiration of the Term*** in accordance with Section 8.2 or Section 8.3 ***shall survive such expiration and the Contractor shall continue to perform the Obligations with respect to any such Charged Off Loan*** in accordance with the terms of this Agreement until otherwise terminated pursuant to the terms hereof.

20. Section 8.1(b) thus functions to integrate the termination provisions of Sections 8.2 and 8.3 with the term provision of Section 8.1(a) of the Collection Agreement. This integration prevents SLS' attempt to craft an "end run" around the termination provisions in the Collection Agreement by purporting to deliver a non-renewal of term notice; the exact "end run" that SLS attempted and about which RTR complains.

21. Therefore, pursuant to Section 8.1(b), if there is no "termination" in accordance with Section 8.2 or 8.3, the Collection Agreement continues, and RTR is entitled to continue collecting the Charged Off Loans until the Collection Agreement is "otherwise terminated pursuant to" its terms (Section 8.1(b), above).

22. The Collection Agreement has never been "otherwise terminated." The Collection Agreement has not been terminated under Section 8.2 because SLS never transferred any loans to RTR – only the Prior Servicer did. This renders termination under Section 8.2 impossible.

23. Moreover, the Collection Agreement has not been terminated in accordance with Section 8.3, because that section addresses a termination due to certain, specific RTR defaults, which SLS does not – and cannot – allege to have occurred.

24. Because the Collection Agreement is not and has never been "otherwise terminated," any demand by SLS for a return of the Charged Off Loans is barred by the express language of the Collection Agreement.

### C. RTR shall perform its "Obligations" to collect "Proceeds."

25. The Collection Agreement provides expansive authority to RTR to enable its collection of the Charged Off Loans, including the right to seek foreclosure as a means of authorized collection of the Charged Off Loans.

26. Section 3.1 states that RTR shall perform its "Obligations" and use commercially reasonable efforts to collect and recover "Proceeds." The terms "Obligations" and "Proceeds" are broadly defined as follows (emphasis added):

> 1.16 "**Obligations**" shall mean (x) the obligation to professionally manage and adequately staff a collection operation and maintain a collection system, in a manner similar to or superior to the collection operation maintained by the Contractor for loans owned by it or other third parties and for whom the Contractor performs similar obligations as the Obligations, and (y) the obligations to collect, resolve or generate Proceeds with respect to the Charged Off Loans and to perform the services and duties specified in this Agreement.

> 1.17 "**Proceeds**" shall mean, with respect to any Charged Off Loan, all Loan principal, Loan interest, Loan fees, Loan sales, awards, litigation recoveries, garnishment receipts, and any other property or cash *collected by the Contractor from a Borrower or other party* (including without limitation such amounts delivered to Contractor pursuant to Section 4.3 hereof) with respect to such Loan, excluding any interest received by the Contractor on balances in the Contractor Recovery Account.

27. The following sections of the Collection Agreement provide that RTR, as "Contractor," is entitled to a fee of 30% for performing its Obligations and recovering Proceeds:

> 1.7 "**Contractor's Fee**" shall mean an amount equal to Contractor's Fee Percentage multiplied by the applicable Net Recoveries collected with respect to each specific Charged Off Loan.
>
> 1.8 "**Contractor's Fee Percentage**" shall mean thirty percent (30%).
>
> 1.15 "**Net Recoveries**" shall mean, with respect to each Loans [*sic*] in each Charged Off Loan Pool, all Proceeds collected with respect to such Loan less all incurred and unreimbursed Ancillary Charges which are permitted, pursuant to Section 1.1, to be allocated to such Loans and recovered from such Proceeds.

28. Section 3.1 of the Collection Agreement also provides that RTR's "authority to perform its Obligations under this Agreement includes those actions expressed in the Limited Power [of] Attorney, attached hereto[.]" The Limited Power of Attorney appoints certain individuals employed by RTR as attorneys-in-fact of SLS for many enumerated purposes, including executing documents in connection with the liquidation, *foreclosure*, collection, settlement, modification, forbearance, or sale of a loan or lien. Section 3.4 grants RTR further authority to carry out the Obligations, stating as follows:

> 3.4   Title to the Charged Off Loans. Title to the Charged Off Loans shall continue to be held by the Trusts. However, the Servicer hereby assigns to the Contractor the authority to defer, waive, release, sell, assign, forgive or vary the terms of any Charged Off Loan, or any Charged Off Loan payments, collateral or any attributes relating to any Charged Off Loan with respect to which the Contractor has Obligations, if in the Contractor's good faith, reasonable judgment, such action would be in the best interests of the Trusts and the Certificate Insurer."

29. The Collection Agreement further specifies that any authority granted to RTR to carry out the Obligations is exclusive and absolute. Specifically, Section 2.3 opens as follows (emphasis added):

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                                                                 Page 9

    2.3 <u>Servicer's Responsibilities</u>. Except as expressly set forth in this Agreement, the Contractor acknowledges and agrees that following the respective Transfer Date, **the Servicer [SLS] will not perform any duties or obligations under the applicable PSA that are similar to the Obligations** during the time any Charged Off Loan is subject to collection by the Contractor pursuant to this Agreement, including without limitation, collecting or mitigating losses with respect to such Charged Off Loan under the applicable PSA.

  30. These provisions unassailably assign to RTR the exclusive right to perform the Obligations and to collect Proceeds, and they thus exclude SLS from performing these same activities with respect to the Charged Off Loans. Actions that RTR exclusively enjoys include the collection of loan principal, loan interest, loan fees, awards, litigation recoveries, garnishment receipts, liquidations, foreclosures, settlements, modifications, forbearances, loan sales, and lien sales, collected from a Borrower or other parties.

  31. Because the Collection Agreement has not been "otherwise terminated," RTR constitutes the sole and exclusive collection/servicing party under the Collection Agreement possessing the authority to perform these activities and to take ancillary actions in collecting the Charged Off Loans.

**D. SLS improperly attempted to limit RTR's right to collect Proceeds.**

  32. During this litigation, SLS sent written notice to RTR imposing a purported unilateral instruction not to prosecute any foreclosures. This contradicts RTR's authorized powers under the Collection Agreement.

  33. Specifically, on May 23, 2016, Brian Skidmore, SLS' Vice President of Recovery, instructed RTR by email that SLS would not allow RTR to conduct any foreclosures. In response to an email from RTR concerning potential foreclosure activity, Skidmore stated that

"[a]t this time, SLS will not be approving any new legal actions." As previously noted, RTR has the authority to collect Proceeds. Proceeds include recoveries achieved through sales, lawsuits, and foreclosures. These collection activities are not subject to any consent by SLS. Because Skidmore's email attempts to restrict RTR's collection efforts, it should have no force or effect, and it has resulted in reduced collection fees by RTR and reduced principal collections ultimately received by the owner of the Charged Off Loans. SLS' attempt to chill RTR's foreclosure activity has served to increase the value of the RTR portfolio to a prospective purchaser, which will have no foreclosure activity restrictions.

34.     Moreover, SLS recently provided RTR with notice that the Trustee identified in the Collection Agreement may seek to sell all of the Charged Off Loans that RTR collects, and to RTR's understanding, that the proposed sale would be pursued and closed without any fees or other compensation paid to RTR. However, the Collection Agreement provides RTR with the authority to sell the Charged Off Loans and, in such event, to collect a fee from any sale of a Charged Off Loan. SLS's production in this litigation (which remains incomplete) reveals that SLS has had at least one communication indicating that only the Charged Off Loans collected by RTR would be subject to this potential sale and that no SLS-collected loans will be subject to this proposed loan sale.

35.     As a result of SLS' actions, RTR has missed and continues to miss opportunities to recover Proceeds.

## IV.
### DECLARATORY JUDGMENT RELIEF

36.     RTR incorporates the above paragraphs by reference.

37. As set forth above, a dispute has (again) arisen between the parties regarding their respective rights and interests with regard to the scope of the termination provisions under the Collection Agreement. In particular, RTR seeks declarations from the Court that:

    A.    SLS' Non-Extension Notice pursuant to Section 8.1(a) does not require RTR to transfer any of the Charged Off Loans or the collection rights associated with them to SLS;

    B.    SLS Non-Extension Notice, to the extent it seeks return of the Charged Off Loans, contradicts the terms and provisions of the Collection Agreement and, therefore, is null, void, and of no force or effect; and

    C.    Under the Collection Agreement, RTR has the exclusive right to carry out the Obligations by taking any and all actions negotiated for and contained in Sections 3.1, 3.4, and the integrated Limited Power of Attorney, including the right to litigate in connection with and foreclose upon properties that serve as security for some of the Charged off Loans, as well as to earn its fee upon the generation of other types of Proceeds collected from a Borrower or other parties. RTR's exclusive rights include (a) the right to foreclose upon properties serving as security for the Charged Off Loans, and (b) the authority to perform and to receive Proceeds as set forth in Sections 3.4 and 1.17 of the Collection Agreement.

38. With respect to the judicial declarations requested herein, RTR is a "person" entitled to a declaratory judgment under the Texas Uniform Declaratory Judgment Act, TEX. CIV. PRAC. & REM. CODE ANN. §§37.001, *et seq.*, to determine the rights and duties of the parties with respect to their interests that are the subject of and fall within the terms of the Collection Agreement. In addition, in light of SLS' removal of this matter from State District to U.S. District Court, RTR seeks declarations regarding the parties' respective rights and obligations pursuit to the federal Declaratory Judgment Act, 28 U.S.C. §2201(a).

39. It has been necessary for RTR to employ the undersigned attorneys to pursue and prosecute these claims and preserve RTR's rights against SLS. Accordingly, RTR requests that

the Court award it recovery from SLS of its reasonable and necessary attorney's fees and expenses of suit incurred herein, as permitted under the law, including without limitation pursuant to TEX. CIV. PRAC. & REM. CODE ANN. chap. 37, the federal Declaratory Judgment Act, and the contractual provisions of the Collection Agreement.

## V.
## BREACH OF COLLECTION AGREEMENT

40. RTR incorporates the paragraphs above by reference.

41. The parties entered into an executed Collection Agreement setting forth their respective current and future interests in the subject Charged Off Loans that were transferred to RTR by the Prior Servicer as well as their respective rights and obligations with respect to Charged Off Loans to be transferred by SLS to RTR in the future, although no such loans have yet been transferred.

42. SLS' conduct in purporting to require RTR to transfer the Charged Off Loans originally transferred to RTR by the Prior Servicer, upon SLS' purported election not to continue the term of the Collection Agreement per the SLS Non-Extension Notice, breaches the Collection Agreement.

43. In addition, SLS has breached the Collection Agreement by prohibiting RTR from maximizing the efficiency of its collection efforts through foreclosure or other procedures with respect to the Charged Off Loans, even though the Collection Agreement authorizes such actions. SLS's breach has resulted in reduced collections and fees earned by RTR.

44. As a direct and proximate result of the breaches by SLS of its contractual obligations and duties, RTR has and likely will in the future continue to suffer actual, nominal, and consequential damages.

45. RTR has been required to engage the services of counsel to prosecute its claims against SLS for breaches of contract. Accordingly, RTR further requests that the Court award it recovery against SLS of its reasonable attorneys' fees incurred in connection with the prosecution of its claims herein as permitted by law and under the provisions of the Collection Agreement.

## **PRAYER**

WHEREFORE, Plaintiff Real Time Resolutions, Inc. prays the Court grant the declaratory relief sought herein against Defendant Specialized Loan Servicing, LLC, that Plaintiff have and recover judgment from and against Defendant for any monetary damages caused by Defendant's breach of contract, pre-judgment and post-judgment interest on all monetary relief sought at the highest rates allowed by law, costs of court, and reasonable attorneys' fees, and for such other and further relief, both at law and in equity, to which Plaintiff may show itself justly entitled.

Respectfully submitted:

/s/ *Anthony A. Petrocchi*
Anthony A. Petrocchi
Texas Bar No. 15851700
tpetrocchi@petrocchilaw.net
ANTHONY A. PETROCCHI, P.C.
5127 Spyglass Drive
Dallas, Texas 75287
(214) 797-2049 (office)
(214) 594-8205 (fax)

/s/ *Jonathan R. Childers*
Michael P. Lynn
mlynn@lynnllp.com
Christopher J. Schwegmann
cschwegmann@lynnllp.com
Jonathan R. Childers
jchilders@lynnllp.com
LYNN PINKER COX & HURST, P.C.
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: 214.981.3800
Facsimile:  214.981.3839
**ATTORNEYS FOR PLAINTIFF AND COUNTER-DEFENDANT REAL TIME RESOLUTIONS, INC.**

## CERTIFICATE OF SERVICE

I certify that on March 7, 2017, a true and correct copy of Plaintiff's Second Amended Complaint was served upon all counsel of record via ECF and e-mail.

*/s/     Jonathan R. Childers*
Jonathan R. Childers

4851-8030-4964, v.  1