**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

REAL TIME RESOLUTIONS, INC.,

    Plaintiff,

V.

SPECIALIZED LOAN SERVICING LLC,

    Defendant.

CAUSE NO. 3:16-cv-00608

---

**SPECIALIZED LOAN SERVICING LLC'S MOTION
TO COMPEL PRODUCTION OF DOCUMENTS AND BRIEF IN SUPPORT**

---

Pursuant to Federal Rule of Civil Procedure 37(a)(3)(B), Specialized Loan Servicing LLC ("SLS") moves the Court to compel the production of documents by Real Time Resolutions, Inc. ("RTR"). As grounds therefor, SLS states the following:

### I.    INTRODUCTION AND SUMMARY

This case involves the right to collect a portfolio of mortgage loans (the "Loans"). Defendant SLS is the master servicer and currently holds the right to service the Loans. RTR and SLS entered into an agreement (the "2013 Collection Agreement") by which SLS transferred to RTR the right collect the Loans as a subcontractor for SLS. In this context, "collection" of the Loans is a subcomponent of the broader servicing rights and obligations held by SLS.

RTR acknowledges that the 2013 Collection Agreement governs its current rights to collect the Loans and that RTR derives it rights with regard to the Loans exclusively from that Agreement with SLS. However, RTR pleads that it previously had the authority to collect the same Loans pursuant to a prior collection agreement with an unnamed "Prior Servicer" and RTR

contends that, due to this prior arrangement, the 2013 Collection Agreement's termination provisions do not apply to those Loans in the same way they apply to other loans that are or might be governed by the 2013 Collection Agreement.

Not surprisingly, SLS requested RTR to produce its collection agreement with the "Prior Servicer," which RTR referenced in its pleadings—in fact, this was SLS's first request for production. SLS also requested documents related to RTR's prior collection agreement and communications between RTR and the "Prior Servicer" pertaining to their agreement and the transfer of the master servicing rights from the Prior Servicer to SLS. Despite the obvious relevance to RTR's claims in this lawsuit, RTR has refused to produce these documents based primarily upon objections that: (i) the agreement and communications with the Prior Servicer are somehow not relevant to its claims or to SLS's defenses; and (ii) the documents contain confidential and proprietary information.

RTR's first objection, regarding relevance, makes little sense in light of RTR's claim that the Loans should be treated differently under the 2013 Collection Agreement due to RTR's collection arrangement with the Prior Servicer. The second objection appears highly disingenuous in light of the fact that RTR has requested from SLS—and in fact requested this Court to compel production—of the same type of agreements between SLS and its other collection subcontractors. Moreover, the parties agreed to a protective order, which was entered by the Court, to address this very type of concern.

SLS has offered to allow RTR to produce the agreement and related communications pursuant to the protective order's attorneys'-eyes-only provision, yet RTR continues to refuse based ostensibly on confidentiality obligations it states it owes to the Prior Servicer. However, during the conference between counsel for this Motion, counsel for RTR admitted RTR never

even asked the Prior Servicer whether it objects to the production of the requested documents. RTR nonetheless continues to stand on its own objections and refuse production. SLS therefore files this motion requesting the Court to compel RTR to produce its collection agreement with the Prior Servicer, documents concerning that agreement, and documents concerning the transfer of master servicing rights from the Prior Servicer to SLS.

## II. ARGUMENT AND AUTHORITIES

A. Applicable Standards

The Federal Rules of Civil Procedure entitle a party to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . ." FED. R. CIv. P. 26(b)(1). Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Rule 37(a)(3)(B)(iv) allows the discovering party to move for an order compelling production of a document when a party refuses to produce documents. FED. R. Civ. P. 37(a)(3)(B)(iv). "Objections to discovery must be stated with specificity, and the responding party has the obligation to explain and support its objections." *Gondola v. USMD PPM, LLC,* No. 3:15-cv-411-M, 2016 WL 3031852, at *8 (N.D. Tex. May 27, 2016).

B. RTR's previous collection agreement with the Prior Servicer and related documents arc highly relevant to RTR's claims and SLS's defenses.

At the heart of RTR's claims is the allegation that the Loans at issue in this lawsuit should be treated differently under the parties' 2013 Collection Agreement because the Loans were previously collected by RTR pursuant to a collection agreement it had with an unnamed "Prior Servicer." RTR pleads:

> One of RTR's clients is a financial institution (the "Prior Servicer") for which RTR collects certain second lien residential mortgages, including a loan portfolio which is the subject of this

proceeding. Pursuant to a 2008[1] collection agreement between RTR and the Prior Servicer, the Prior Servicer classified loans as Charged Off Loans and transferred those loans to RTR for collection. Among the rights given to RTR was the exclusive right to contact the borrowers associated with each such charged off loan.[2]

Based upon this exclusive arrangement that RTR asserts it had with the Prior Servicer, RTR contends the optional termination provisions in its 2013 Collection Agreement with SLS do not apply to the Loans at issue. RTR pleads:

> Because the Charged Off Loans at issue had been transferred to RTR *by the Prior Servicer,* they were *not* transferred by SLS (the new servicer) and therefore cannot be subject to Optional Termination under Section 8.2 of the Collection Agreement.

RTR thus contends that SLS's prior notice under the optional termination provision, despite being otherwise proper and in compliance with the Agreement, was ineffective because of RTR's previous collection of the Loans under its agreement with the Prior Servicer.

RTR also contends the term renewal provision of the 2013 Collection Agreement does not apply to the Loans and that SLS therefore cannot stop the Agreement from automatically renewing, perpetually, for new one-year terms with regard to the Loans. While acknowledging that SLS timely provided the 30-day written notice of non-renewal pursuant to the extension/renewal provision of the Agreement,[4] RTR pleads SLS's non-renewal was ineffective because—according to RTR's interpretation of the Agreement—the term-renewal provision incorporates the optional termination provision just discussed and therefore includes the same restriction with regard to the Loans at issue. Thus, according to RTR, SLS is perpetually stuck, locked into the 2013 Collection Agreement with regard to the Loans at issue, due to RTR's

---

[1] RTR's counsel later acknowledged that the reference to a "2008" collection agreement was a typographical or clerical error because the collection agreement at issue was executed in 2010.
[2] Plaintiff's First Amended Complaint, Doc. 58 (the "Amended Complaint"), ¶ 9.
[3] Amended Complaint, ¶ 15 (italics and underlining in original).
[4] Amended Complaint, ¶ 17.

previous business arrangement with the Prior Servicer. To support this alleged right to perpetual collection, which would result in profound and highly-irregular effects on the ability of the holder of the Loans to sell the loans or transfer the broader servicing rights, RTR pleads the following circular logic:

> Section 8.1(b) thus functions to integrate the termination provisions of Section 8.2 and 8.3 with the term provision of Section 8.1(a) of the Collection Agreement. . . . Therefore, pursuant to Section 8.1(b) if there is no "termination" in accordance with Section 8.2 or 8.3 [the same provisions RTR contends SLS cannot utilize to terminate with regard to the Loans], the Collection Agreement continues, and RTR is entitled to continue collecting the Charged Off Loans until the Collection Agreement is "otherwise terminated pursuant to" its terms (Section 8.1(b), above). The Collection Agreement has never been "otherwise terminated." The Collection Agreement has not been terminated under Section 8.2 because SLS never transferred any loans to RTR — only the Prior Servicer did. This renders termination under Section 8.2 impossible.[5]

RTR thus argues that SLS cannot prevent the automatic renewal of the 2013 Collection Agreement with regard to the Loans because, in addition to the 30-day written notice SLS provided, the Agreement must also be "otherwise terminated" with regard to the Loans. And, while RTR acknowledges that SLS did previously invoke the optional termination provision with regard to the Loans,[6] RTR asserts that this too was ineffective based on RTR's previously-discussed argument that SLS does not have the right to optionally terminate the Agreement with regard to the Loans.

At the crux of RTR's circular reasoning sits RTR's fundamental premise that the Loans should be treated differently under the parties' Agreement due to RTR's previous collection of the Loans for the Prior Servicer. By its pleadings, RTR has clearly placed at issue the scope and terms of its previous collection agreement with the Prior Servicer, and SLS is entitled to receive

---

[5] Amended Complaint, ¶¶ 20-22.
[6] Amended Complaint, ¶ 12.

production of that agreement and any related documents and communications. Also clearly at issue is the transfer of the master servicing rights from the Prior Servicer to SLS, as well as RTR's communications with the Prior Servicer regarding that transfer.

C.    **This Court should overrule RTR's objections and compel RTR to produce its agreements with the Prior Servicer and any related documents and communications.**

<u>Exhibit A</u> to this Motion is a true and correct copy of SLS's First Request for Production And First Set of Interrogatories to RTR. <u>Exhibit B</u> to this Motion is a true and correct copy of RTR's Objections and Responses to SLS's First Request for Production And First Set of Interrogatories.

SLS requests the Court to compel production of the following documents requested in SLS's Requests for Production Nos. 1, 3, 4, 6, 7, 9, and 10, and to overrule RTR's objections thereto:[7]

| | |
|---|---|
| Request No. 1: | RTR's collection agreement with the Prior Servicer[8] discussed in Par. 9 of RTR's First Amended Complaint |
| Request No. 3: | Communications between the Prior Servicer and RTR concerning RTR's collection agreement with the Prior Servicer |
| Request No. 4: | Documents concerning RTR's collection agreement with the Prior Servicer |

---

[7] See Exhibit A, pp. 6-7 and definitions section.

[8] SLS specifically requested "The 2008 Collection Agreement" which SLS defined in the discovery requests as "the 2008 collection agreement entered between RTR and the Prior Servicer, as referenced in paragraph 9 of Plaintiff's Complaint." Exhibit A, p. 6. As discussed more fully above, Paragraph 9 of both Plaintiff's Complaint and First Amended Complaint referred to a "2008 collection agreement." However, RTR responded to SLS's production requests by stating, "[t]here is no responsive '2008 Collection Agreement.' Instead, the responsive document is a 2010 Collection Agreement between RTR and the Prior Servicer entered into on or around October 1, 2010 (the `2010 Collection Agreement')." During the conference between counsel pertaining to this Motion, RTR's counsel admitted that the reference to a "2008" agreement was a typographical error in both of RTR's pleadings. Nonetheless, SLS and RTR have always understood that SLS's references to the "2008 Collection Agreement" in its discovery requests was a reference to RTR's collection agreement with the Prior Servicer, which RTR discussed in Par. 9 of its pleadings. In this regard, RTR stated in its discovery responses that the 2010 Collection Agreement it had with the Prior Servicer is "responsive" to SLS's discovery requests. However, to the extent the Court finds SLS's reference to the "2008 Collection Agreement" in its requests for production is not broad enough, within this context, to encompass RTR's collection agreement with the Prior Servicer, by which RTR collected the Loans at issue, SLS hereby requests leave to amend its discovery requests to comport with the parties' understanding.

| | |
|---|---|
| Request No. 6: | Documents related to the assignment from the Prior Servicer to SLS of the servicing rights associated with the Loans at issue in this Lawsuit (the "Service Transfer") |
| Request No. 7: | Communications between the Prior Servicer and RTR related to the Service Transfer |
| Request No. 9: | Communications between the Prior Servicer and RTR since SLS and RTR entered the 2013 Collection Agreement |
| Request No. 10: | Communications between the Prior Servicer and RTR related to RTR's collection of the Charged Off Loans, since RTR and SLS entered the 2013 Collection Agreement |

RTR withheld production of documents responsive to these requests primarily based on relevance and confidentiality concerns, and because "the parties need to implement reasonable measures to safeguard and/or restrict access to the information, including entry of an agreed protective order."[9] Two days after receiving RTR's written objections, SLS provided a proposed agreed protective order for RTR's consideration. Since that time, the Court entered an Agreed Protective Order that allows the parties to designate produced documents either as "Confidential Information" or "Attorneys' Eyes Only."[10]

SLS has offered to allow RTR to designate the documents requested by this motion as "Attorneys' Eyes Only" under the Order. Documents so designated are granted strict protection and, as one might expect, may only be disclosed by the receiving party to very limited categories of individuals, including the Court, the parties' legal counsel, and outside experts."[11] Consequently, the parties have now implemented "reasonable measures to safeguard and/or restrict access to the information" and SLS's objections regarding confidentiality and

---

[9] Exhibit B, *passim.*
[10] Agreed Protective Order, Doc. 13.
[11] *Id.* at ¶ 9.

competition are either entirely inapplicable or, at the least, greatly outweighed by the relevance of those documents.[12]

Moreover, RTR's objections to the production of its previous collection agreement with the Prior Servicer, and related documents should be entitled to very little weight in light of the fact that RTR has requested the same type of documents from SLS. In fact, RTR requested this Court to compel production of SLS's collection agreements with its other collection subcontractors. Paragraph 5 of the Court's October 12, 2016 Order requires SLS to produce "written agreements between SLS, on the one hand, and DiTech Financial, LLC f/k/a Green Tree Servicing and/or other vendors, on the other hand, covering the servicing and/or collection of loans for or on behalf of SLS."[13] Unlike the agreement requested by SLS through this motion, the agreements requested by RTR between SLS and "other vendors" did not pertain to the Loans at issue in this lawsuit. Any relevance those agreements bore to this Lawsuit would also exist with regard to RTR's collection agreement with the Prior Servicer. RTR's previous agreement, however, would also be relevant to the existence, scope, and duration of RTR's collection rights in the Loans—the very collection rights at issue in this Lawsuit. Any concerns RTR might have with regard to the confidentiality of its previous agreement with the Prior Servicer, and the related documents, are offset by the Court's protective order and are greatly outweighed by the relevance of those documents to the claims and defenses at issue in this Lawsuit.

E.  The Court Should Overrule RTR's General Objections

Asserting general, blanket objections is "inconsistent with the Federal Rules and is not warranted by existing law." *Heller v. City of Dallas,* 303 F.R.D. 466, 484 (N.D. Tex. 2014).

---

[12] RTR's contention that it cannot produce those documents due to "confidentiality restraints imposed by the Prior Servicer" should likewise be given little weight in light of the fact that, during the conference between counsel pertaining to this motion, RTR's counsel admitted that RTR had not even requested permission from the Prior Servicer to produce the documents to SLS.
[13] Order Dated Oct. 12, 2016, Doc. 28,115.

"Counsel should cease and desist from raising these free-standing and purportedly universally applicable 'general objections' in responding to discovery requests." *Id.* RTR lodged 9 general objections, and incorporated the general objections by reference into each of its discovery responses. Under *Heller,* the Court should overrule each of RTR's general objections.

F.     The Court Should Overrule Each of RTR's Objections Based on Admissibility

Rule 26(b)(1) allows for the discovery of "any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . FED. R. C►v. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* The December 2015 amendments to Rule 26(b)(1) removed the requirement that "discovery appear[ ] reasonably calculated to lead to the discovery of admissible evidence." *See id.*

In response to Requests for Production Nos. 1 and 3-5 RTR objects that the discovery sought "is not reasonably calculated to lead to the discovery of admissible evidence." In light of the December 2015 amendments, this is an improper objection. In any event, as more fully discussed above, SI.,S's production requests are reasonably calculated to discover admissible evidence. The Court should overrule this objection.

G.     The Court Should Overrule RTR's Vagueness And Over-Breadth Objections

In response to Requests for Production Nos. 3 and 4, RTR objects to the use of the term "concerning" as "vague, ambiguous, and potentially overbroad in scope." Applying these terms' plain meanings within the context of these requests they are neither vague nor ambiguous. Nor, are they overly broad. This type of frivolous objection frustrates the discovery process and should be overruled.

## III. CONCLUSION

SLS requests the Court to compel RTR to produce the responsive documents identified above and in the proposed order accompanying this Motion, as well as a corresponding privilege log, and SLS requests the Court to overrule RTR's objections to such production. SLS further prays for all relief, both legal and equitable, to which it is entitled.

Respectfully submitted,

/s/ Matthew K. Hansen
Robert T. Mowrey
  State Bar No. 14607500
  rmowrey@lockelord.com
Matthew K. Hansen
  State Bar No. 24065368
  mkhansen@lockelord.com
Christopher M. Boeck
  State Bar No. 24050301
  cboeck@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue
Suite 2800
Dallas, TX 75201
(214) 740-8000 (Telephone)
(214) 740-8800 (Telecopy)

ATTORNEYS FOR DEFENDANT AND COUNTER-PLAINTIFF SPECIALIZED LOAN SERVICING LLC

## CERTIFICATE OF CONFERENCE

I certify that on April 11, 2017 and April 19, 2017, I personally conferred with counsel for the Plaintiff regarding the relief requested in this motion. Plaintiff is opposed.

/s/ Matthew K. Hansen
Matthew K. Hansen

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on this the 19th day of April, 2017 on counsel of record, via electronic mail and certified mail, return receipt requested consistent with the Federal Rules of Civil Procedure:

Anthony A. Petrocchi
ANTHONY A. PETROCCHI, P.C.
5127 Spyglass Drive
Dallas, Texas 75287
tpetrocchilaw.net

Michael P. Lynn
LYNN PINKER COX & HURST LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
mlynn@lynnllp.com

                                                  /s/ Matthew K. Hansen
                                                  Matthew K. Hansen