**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **REAL TIME RESOLUTIONS, INC.,** | § | |
| | § | |
| **Plaintiff/Counter-Defendant,** | § | |
| | § | |
| **V.** | § | **Civil Action No. 3:16-cv-00608-L** |
| | § | |
| **SPECIALIZED LOAN SERVICING LLC,** | § | |
| | § | **To the Honorable United States** |
| **Defendant/Counter-Plaintiff.** | § | **Magistrate Judge** |
| | § | |

_____

### REAL TIME RESOLUTIONS, INC.'S EMERGENCY MOTION FOR PROTECTION
_____

TO THE HONORABLE MAGISTRATE JUDGE STICKNEY:

Plaintiff/Counter-Defendant Real Time Resolutions, Inc. ("RTR") files this *Emergency Motion for Protection*, showing as follows:

## I.     SUMMARY

RTR seeks the court's protection in whole or in part from complying with an onsite audit of RTR that Specialized Loan Servicing LLC ("SLS") has requested, pursuant to Fed. R. Civ. P. 26(c)(1). The timing of SLS's audit request is extremely unusual and suggests that SLS seeks the audit as a last-minute discovery device sought five months *after* the parties' agreed-upon discovery deadline has expired. SLS seeks to audit RTR for only the second time during the almost five years in which the Collection Agreement between RTR and SLS has been in place, and for the *first time* since this lawsuit commenced. Unlike prior occasions when SLS requested specific information, here, SLS has not provided any reason for why it must conduct this audit at this particular time, despite RTR's requests.

Good cause exists for the court to grant RTR's requested protection.  The timing of SLS's requested audit is improper, because SLS apparently seeks to audit RTR as a discovery tool over 5 months after discovery in this case closed on May 1, 2017, and while the parties await rulings on their cross-motions for summary judgment.  Moreover, SLS has already obtained discovery from RTR in this lawsuit, and SLS has a motion to compel discovery pending through which it can address discovery issues that it believes remain outstanding.  While RTR acknowledges that the Collection Agreement allows SLS the option to perform periodic audits of certain specified items, SLS seeks to audit almost the entire scope of RTR's business operations. Moreover, the terms governing such an audit do not address whether – and how – an audit might proceed if RTR and SLS are in litigation, particularly when the audit is sought after the discovery deadline.

The timing of the audit and the lack of detail provided by SLS render the requested audit unduly burdensome to RTR.  Currently, RTR is finalizing year-end tasks, in addition to working to complete a major transaction scheduled to close in January 2018, and preparing its Q4 financial information for its Q1 2018 financial audit.  Redirecting RTR's staff to prepare for SLS's audit as this juncture would cause a significant expense of time and money to RTR.  SLS will suffer no prejudice were the audit stayed until the earlier of:  (a) May 1, 2018, and (b) 20 days after the court adjudicates the parties' cross-motions for summary judgment.

RTR seeks relief on an emergency, expedited basis because the current deadline for RTR to provide the "pre-audit" materials that SLS requests is January 6, 2018.  RTR cannot obtain a ruling on this Motion for Protection before that January 6, 2018 deadline under the time limits for responses and replies otherwise required under Court Rules.  Accordingly, RTR respectfully requests a short emergency hearing utilizing a portion of the time now scheduled before the Court on December 21, 2017 or, in the alternative, by telephone conference with Judge Stickney.

## II.   **BACKGROUND**

1.      On or around February 1, 2013, a Collection Agreement was entered by SLS, as the servicer, and RTR, as the collection contractor.  *See* RTR's MSJ [Doc. 81] at 5 (PageID 1633).

2.      Since the inception of the Collection Agreement, SLS has conducted only one prior formal audit.  SLS conducted this audit on January 6-8, 2015, with which RTR permitted and cooperated.  This audit occurred *before* RTR filed this lawsuit.  Aside from this formal audit, RTR provided SLS specific documents and information in October 2014 and returned a questionnaire to SLS in December 2014.

3.      RTR filed this lawsuit on January 25, 2016.  *See* Pl's Orig. Pet. [Doc. 1-3] (Page ID 16).  SLS filed its original counterclaim on March 3, 2016.  *See* Orig. Ans., Aff. Defs, & Orig. Ctr. Claim [Doc. 3] (Page ID 46).

4.      The deadline for discovery in this lawsuit occurred on May 1, 2017.  *See* Doc. 37.

5.      The last pleading filed in connection with the parties' cross-motions for summary judgment was filed on August 10, 2017.  *See* Doc. 123 (Page ID 3511).

6.      On October 20, 2017, SLS first made a request to RTR to conduct a detailed audit of RTR's collection and servicing history and procedures, as well as review documents and information relating to RTR's financial status.  This is only the second time that SLS has requested to conduct a formal audit of RTR's collection procedures since the Collection Agreement was executed as of February 1, 2013.

7.      The current deadline for RTR to provide SLS with the "pre-audit" materials that SLS has requested is January 6, 2018.  This extended deadline was set by SLS in response to RTR's request (rejected by SLS) to postpone any audit until after disposition of the summary

judgment motions, all as part of the discussions that occurred directly between SLS and RTR and without involvement of the parties' outside legal counsel.

8.      Section 9.12 of the Collection Agreement, "Inspection," does not address whether SLS may conduct an audit of RTR during the pendency of litigation between SLS and RTR. *See* RTR's MSJ App. [Doc. 82] at Collection Agmt (PageID 1703-04).

9.      Since the time of SLS's initial request, RTR has sought to reach an agreement with SLS, without participation of counsel in this case. Although SLS agreed to extend pre-audit materials date to January 6, 2018, SLS has declined RTR's request to postpone the audit until after the parties' motions for summary judgment are adjudicated.

10.     RTR's counsel has reached out to SLS's counsel on the audit issue. RTR's counsel understands from those discussions that SLS is handling the audit directly such that SLS's counsel does not appear to have authority to negotiate on behalf of SLS on this issue.

11.     SLS seeks its audit after the May 1, 2017 close of discovery. *See* Doc. 37. It also does so only after the parties' cross-motions for summary judgment have been submitted and are pending before the Court for disposition. The parties filed all briefing associated with their summary judgment motions by August 10, 2017, which is over *two months before* SLS sent RTR its audit request. *See* Doc. 123 (Page ID 3511). SLS also sent its audit request even though it has a Motion to Compel Discovery that be heard by Judge Stickney during the December 21, 2017 hearing. *See* Doc. 133 (PageID 3666).

12.     This Motion for Protection is timely because RTR seeks relief before January 6, 2018, which is SLS's noticed date for RTR to provide the pre-audit materials. RTR seeks protection not for purposes of delay, but so that justice may be done.

13.     RTR seeks the court's protection because SLS has not articulated why it seeks to audit RTR now – given the procedural posture of the litigation, and SLS has apparently not authorized its attorneys to negotiate on its behalf on this issue.

### III.     ARGUMENTS AND AUTHORITIES

RTR seeks protection from complying with pre-audit production and an onsite audit of RTR that Specialized Loan Servicing LLC ("SLS") has requested, in whole or in part, pursuant to FED. R. CIV. P. 26(c)(1), in order to protect RTR from annoyance, oppression, undue burden, and expense, and to promote finality of discovery in this lawsuit – which is nearly two years old.

#### A.     RTR seeks protection from the audit in whole.

RTR first requests the Court to grant its Motion for Protection with respect to SLS's request to audit RTR in whole, such that SLS's requested audit shall be suspended until at least 20 days after Judge Lindsay rules on the parties' pending cross-motions for summary judgment.

Good cause exists for RTR's requested protection.  RTR has sought without success to reach an agreement or accommodation with SLS whereby the audit can take place but after the court adjudicates the pending summary judgment motions.  Although SLS has agreed to extend the date by which RTR is to provide SLS with the pre-audit materials to January 6, 2018, SLS apparently will not agree to postpone the audit until after the parties' motions for summary judgment are adjudicated.

Further, through its requested audit, SLS appears to seek to learn information pertaining to RTR's collection and servicing history and procedures with respect to the services it has performed under the Collection Agreement that is at issue in this lawsuit.  The nature of the requested audit therefore appears to involve the investigation of subject matters that exist in this litigation.   The timing, breadth, and scope of SLS's requested audit indicate that SLS is

attempting to use the audit as a vehicle to conduct discovery after the agreed-upon discovery deadline in this lawsuit.  The audit therefore appears to be used for an inappropriate purpose.  In the now close to five years that the Collection Agreement has been in place, SLS's recent request for a formal audit is only the second time in the entire contract term, and the first time since this lawsuit was filed on January 25, 2016.  Therefore, SLS cannot contend that it seeks the audit simply as a matter of course.

The requested audit is also unduly burdensome, annoying, oppressive, and expensive. Undertaking an audit of the magnitude of the request at issue is time consuming and expensive, and it would require a considerable diversion of resources by RTR from its regular business operations.  This is exactly what Section 9.12 prohibits.  *See* RTR's MSJ App. [Doc. 82] at Collection Agmt (PageID 1703-04) ("Any such audit or inspection . . . shall not reasonably interfere with [RTR's] normal business operations.").  Currently, RTR is finalizing year-end tasks, in addition to working to complete a major transaction scheduled to close in January 2018, and preparing its Q4 financial information for its Q1 2018 financials.  Redirecting RTR's staff to prepare for SLS's audit as this juncture would cause a significant expense of time and money to RTR.

And the court's rulings on the parties' motions for summary judgments can affect the scope, timing, and need for the requested audit.  Granting RTR its requested protection will therefore enable it to avoid undue burden and expense that may be avoidable, and will reduce costs of the parties in this litigation.

The requested protection will not result in legal prejudice to SLS.  There is no pressing need for SLS to conduct an audit now, especially given the parties' pending cross-motions for summary judgment.  And SLS has not articulated a specific reason for requesting the audit or

otherwise explained why it needs to conduct a formal audit at this juncture in the litigation.  SLS has waited nearly three years to conduct a formal audit, and it will suffer no legal prejudice were the court to protect RTR from the audit until the earlier of:  (a) May 1, 2018, and (b) 20 days after the court adjudicates the parties' cross-motions for summary judgment.

Accordingly, RTR requests the Court to protect RTR and prohibit SLS from proceeding with the audit until the earlier of:  (a) May 1, 2018, and (b) 20 days after Judge Lindsay issues his rulings on the parties' pending motions for summary judgment.  Such relief would preserve the status quo because it would keep discovery closed and enable RTR to maintain its ordinary business operations.  Additionally, it would prevent an audit and entailed expenses of time and money from occurring during the pendency of this lawsuit until likely reasonably after the court rules on the parties' pending summary judgment motions.

### B.      RTR seeks protection from the audit in part.

Alternatively, should the Court determine that SLS may proceed with an audit, RTR requests the Court to grant its Motion for Protection with respect to SLS's request to audit RTR in part pursuant to Rule 26(c)(1)(B)-(D), in order to impose reasonable protections that are commensurate with the status of this litigation, including placing reasonable limitations on the terms, method, and procedure for the audit.

Further, SLS first sought the audit 5 months after the discovery deadline and over 2 months after the parties' last briefing on the summary judgment motions.  Given the timing, RTR also requests the court to order as a reasonable protection that no materials, information, or results that SLS may obtain from the audit may be: (a) considered as timely products of discovery in this lawsuit; (b) allowed for submission as admissible evidence in this litigation; and/or (c) permitted for use as a basis to support any claim, defense, or request for relief by SLS

in this lawsuit.  Discovery is closed.  SLS has already obtained extensive discovery from RTR in this lawsuit.  Additionally, there is a hearing on the parties' Motion to Compel set before Judge Stickney for Thursday, December 21, 2017 at 9:00 a.m., through which SLS can address discovery issues that it believes remain outstanding.  For all of these reasons, the court should grant RTR its requested protection in whole or in part.  *See* FED. R. CIV. P. 26(c)(1).

### PRAYER

WHEREFORE, Plaintiff/Counter-Defendant Real Time Resolutions, Inc. respectfully requests the Court to grant its Emergency Motion for Protection in whole and/or in part as set forth above; and to grant RTR such other and further relief, both at law and in equity, to which it is justly entitled.

DATED: December 20, 2017                    Respectfully submitted,

/s/ *Anthony A. Petrocchi*
Anthony A. Petrocchi
Texas Bar No. 15851700
tpetrocchi@petrocchilaw.net
ANTHONY A. PETROCCHI, P.C.
5127 Spyglass Drive
Dallas, Texas 75287
Telephone: (214) 797-2049
Facsimile:  (214) 594-8205

- and -

/s/ *Jonathan R. Childers*
Michael P. Lynn
Texas Bar No. 12738500
mlynn@lynnllp.com
Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
Jonathan R. Childers
Texas Bar No. 24050411
jchilders@lynnllp.com
LYNN PINKER COX & HURST, LLP
2100 Ross Avenue, Suite 2700

Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile:  (214) 981-3839

**ATTORNEYS FOR PLAINTIFF/COUNTER-
DEFENDANT REAL TIME RESOLUTIONS,
INC.**

<u>**CERTIFICATE OF CONFERENCE**</u>

Prior to filing this Motion for Protection, counsel for the parties conferred regarding the relief requested therein. During the November conferences, counsel for SLS reported that SLS did not consider the matter to be covered by the scope of this proceeding.  Counsel for RTR, as movant, have in good faith conferred with counsel for SLS in an effort to resolve the dispute without court action, including on November 7, 9, and 16, and December 20, 2017.   On December 20, 2017, a member of counsel for RTR, Jonathan R. Childers, provided a member of counsel for SLS, Christopher M. Boeck, with a copy of the Motion.  Mr. Boeck has not yet received a response from his client as to whether SLS is opposed or unopposed.   SLS is presumably opposed.

/s/ *Jonathan R. Childers*
Jonathan R. Childers

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on December 20, 2017, a true and correct copy of the foregoing was served on all counsel of record via the Court's ECF system and e-mail.

/s/ *Jonathan R. Childers*
Jonathan R. Childers

4829-3571-4137, v.  1