**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| REAL TIME RESOLUTIONS, INC., | § § § | |
| Plaintiff/Counter-Defendant, | § § | |
| V. | § § | Civil Action No. 3:16-cv-00608-L |
| SPECIALIZED LOAN SERVICING LLC, | § § § | To the Honorable United States |
| Defendant/Counter-Plaintiff. | § § § | Magistrate Judge |

**REAL TIME RESOLUTIONS, INC.'S MOTION FOR RECONSIDERATION OF
ORDER FROM MAGISTRATE JUDGE, AND BRIEF IN SUPPORT**

Anthony A. Petrocchi
tpetrocchi@petrocchilaw.net
Texas Bar No. 15851700
**ANTHONY A. PETROCCHI, P.C.**
5127 Spyglass Drive
Dallas, Texas 75287
Telephone:  214.797.2049
Facsimile:  214.594.8205

Michael P. Lynn
Texas Bar No. 12738500
mlynn@lynnllp.com
Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
Jonathan R. Childers
Texas Bar No. 24050411
jchilders@lynnllp.com
**LYNN PINKER COX & HURST LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: 214.981.3800
Facsimile: 214.981.3839

**ATTORNEYS FOR PLAINTIFF AND COUNTER-
DEFENDANT REAL TIME RESOLUTIONS, INC.**

TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................3

I.      SUMMARY...................................................................................................................4

II.     BACKGROUND...........................................................................................................5

III.    ARGUMENT AND AUTHORITIES............................................................................8

        A.      All Discovery Must be Relevant and Proportional
                to the Merits of a Legal Claim ............................................................................8

        B.      The Discovery is Unduly Burdensome ...............................................................14

        C.      Item no. 1 of the Order Should be Revised to Reflect
                the Correct Agreement........................................................................................15

PRAYER........................................................................................................................................16

CERTIFICATE OF CONFERENCE............................................................................................18

CERTIFICATE OF SERVICE .....................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

*Carr v. State Farm Mut. Auto. Ins.*, 312 F.R.D. 459 (N.D. Tex. 2015)...........................................9

*Edmondson v. Velvet Lifestyles, LLC*, No. 15-24442-CIV-LENARD/
    GOODMAN, 2016 U.S. Dist. LEXIS 167564 (S.D. Fla. Dec. 5, 2016) ................................9

*Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088, 2016 U.S. Dist. LEXIS
    18460 (S.D.N.Y. Feb. 16, 2016) .........................................................................................9

**Statutes, Rules**

FED. R. CIV. P. 26................................................................................................................4, 9, 11, 12

FED. R. EVID. 401 ...........................................................................................................................9

TO THE HONORABLE MAGISTRATE JUDGE:

Plaintiff/Counter-Defendant Real Time Resolutions, Inc. ("RTR") files its *Motion for Reconsideration of Order from Magistrate Judge, and Brief in Support*, showing as follows:

## I.  SUMMARY

RTR objects to and seeks reconsideration of Magistrate Judge Stickney's ruling with respect to item nos. 1 and 6 of his Order [Doc. 144]. The language of item no. 6 of the Order could be interpreted to require RTR to produce documents that are not proportional to the needs of the case, and such proportionality is required by FED.R.CIV.P. 26(b)(1); exceeds the scope of relief requested by SLS; compels RTR to produce information that is overbroad and not reasonably calculated to lead to the discovery of admissible evidence; and is unduly burdensome to RTR in terms of both time and money, potentially encompassing review and production of as many as 90,000 emails which have no conceivable relationship at all to the transactions, agreement, and to the claims forming the subject matter of this litigation. Additionally, item no. 6 of the Order requires RTR to produce its highly confidential business information to a direct competitor – SLS – to its disadvantage, and RTR's contractual obligations with Bank of America prohibit disclosure absent prior-approval of Bank of America.

Accordingly, RTR respectfully requests the Honorable Magistrate Judge to reconsider the January 9, 2018 Order as it relates to item no. 6 and revise same to include limits as to scope similar to the wording of the other rulings contained in that Order, such as the following narrowing language:

> RTR shall produce to SLS all communications between Bank of America and RTR since SLS and RTR entered into the 2013 Collection Agreement which are in RTR's possession, custody, or control, relating to: (a) the 2013 Collection Agreement between SLS and RTR; (b) the relationship between SLS and RTR; and/or (c) the relationship between Bank of America and RTR relating to the Charged Off Loans and/or SLS.

RTR also requests that the Court grant its objection to and correct item no. 1 of the Order, which would require RTR to produce a 2008 agreement between RTR and Bank of America. The reference by RTR to the 2008 agreement was an error, which RTR corrected on numerous occasions in this lawsuit, including in its June 15, 2016 discovery request, in its May 23, 2016 discovery responses, and during the April 25, 2017 deposition of Eric Green, and through discussions with opposing counsel. The 2008 agreement was superseded by a subsequently executed 2010 agreement between RTR and Bank of America, together with an accompanying Statement of Work, or SOW, relating to the Charged Off Loans. RTR has produced the SOW and a redacted version of the 2010 agreement, disclosing the provisions which SLS identified as those it wished to review. RTR seeks a revision of item no. 1 to reflect production of the 2010 agreement between RTR and Bank of America, rather than the superseded agreement mistakenly referenced in its pleading.

## II.   BACKGROUND

1. On or around February 1, 2013, a Collection Agreement was entered by SLS, as the servicer, and RTR, as the collection contractor. *See* RTR's MSJ [Doc. 81] at 5 (PageID 1633).

2. RTR filed this lawsuit on January 25, 2016. *See* Pl's Orig. Pet. [Doc. 1-3] (Page ID 16). SLS filed its original counterclaim on March 3, 2016. *See* Orig. Ans., Aff. Defs, & Orig. Ctr. Claim [Doc. 3] (Page ID 46).

3. On April 19, 2017, SLS filed its Motion to Compel Production of Documents and Brief in Support [Doc. 65] seeking production of documents in connection with RTR's servicing of the Charged Off Loans for Bank of America prior to the time of the February 2013 Collection Agreement. In that Motion, SLS requested a copy of the agreement between Bank of America and RTR governing the servicing of the Charged Off Loans and "related documents." *See* Mot. to

Compel [Doc. 65]. SLS did not argue to the Court in the substance of its Motion or at the December 21, 2017 hearing on the parties' Motions to Compel, that it sought to compel RTR to produce any agreements or communications between RTR and Bank of America other than the agreement to service the Charged Off Loans and communications related to that servicing agreement.

4.   The best evidence of SLS's Motion to Compel is the language of that motion itself, through which SLS argued, in relevant part, as follows:

> By its pleading, RTR has clearly placed at issue the scope and terms of its previous collection agreement with the Prior Servicer, and SLS is entitled to receive production of that agreement and any related documents and communications. Also clearly at issue is the transfer of the master servicing rights from the Prior Servicer to SLS, as well as RTR's communications with the Prior Servicer regarding that transfer.

SLS's Mot. to Compel [Doc. 65] at 5-6 (PageID 537).

5.   The clear goal as articulated by SLS was and is to understand the entire arrangement between RTR and Bank of America with respect to the agreement between RTR and Bank of America and the service transfer of the Charged Off loans that are the subject matter of this lawsuit. *Cf. id*.

6.   In fact, in opposing any requirement that it produce to RTR communications with non-party vendors' relating to SLS's collection agreements, SLS complained as follows:

> SLS opposes this production because it creates a significant burden upon SLS that is not proportionate to the needs of the case. SLS has already produced the agreements, themselves, as well as the correspondence by which SLS terminated those agreements. Production of additional communications between SLS and its vendors pertaining generally to the agreements would be: (i) unreasonably cumulative; (ii) difficult and costly because such documents are not readily susceptible to keyword searches or other efficient gathering techniques; (iii) of minimal importance in resolving the issues; and (iv) likely to cause burdens that are outweighed by any benefit given the scope of documents already produced by SLS.

\* \* \*

> RTR's request for *all* communications with those non-party vendors, pertaining to collection agreements *that do not cover the loans at issue* in this lawsuit, is unreasonably cumulative, disproportionate to the needs of the case, and creates burdens that are not justified by any benefit to the parties in this lawsuit. So too is RTR's request for contracts and communications between SLS and the Prior *Servicer to the extent this request pertains to agreements or loans not at issue in this lawsuit*.

SLS Response to RTR's Third Mot. to Compel [Doc. 84] at pp. 3, 4 (PageID 2023, 2024) (emphasis added).

7. To date, SLS has produced in this case less than a total of 75 emails between: (a) SLS and Bank of America; (b) SLS and Green Tree Servicing; and (c) SLS and Assured Guaranty, Ltd., the company that insured the bonds that own the Charged Off Loans.

8. The deadline for discovery in this lawsuit occurred on May 1, 2017. *See* Doc. 37.

9. On December 21, 2017, Magistrate Judge Stickney held a hearing on SLS's Motion to Compel Production of Documents [Doc. 65], RTR's Third Motion to Compel [Doc. 67], and SLS's Motion for Leave to Conduct a 30(b)(6) Deposition [Doc. 120].

10. On January 9, 2018, an Order [Doc. 144] was entered by Magistrate Judge Stickney. Among other rulings, and particular to the subject matter of this Motion for Reconsideration, the Order requires that RTR "produce to SLS communications between the Prior Servicer and RTR since SLS and RTR entered the 213 Collection Agreement, which are in RTR's possession, custody, or control." Unlike the other items set forth in the Order, item no. 6 *does not include* restrictions or limits with respect to relevance or proportionality, such as those with respect to other rulings therein (*see e.g.*, Order, item no. 10). RTR seeks clarification and revisions of item no. 1 of the Order so that it addresses the operative agreement between RTR and Bank of America, rather than a superseded, irrelevant document.

REAL TIME RESOLUTIONS, INC.'S MOTION FOR RECONSIDERATION                                    PAGE 7
OF ORDER FROM MAGISTRATE JUDGE AND BRIEF IN SUPPORT

11. Prior to filing for reconsideration, counsel for RTR discussed these issues with SLS's counsel in an effort to resolve this matter amicably. On January 16 and 17, 2017, RTR requested SLS to accept the same narrowing language that RTR now requests the court to accept through reconsideration. Although SLS's counsel indicated a willingness to address this matter as requested, asking for and receiving a detailed email setting out the matters raised herein, SLS did not respond until the afternoon of January 23, 2018, requiring production of additional matters, the scope of which modifications RTR does not have sufficient time to evaluate or respond to before meeting the current filing deadline. RTR will continue in its good faith efforts to explore the possibility of amicable resolution of this discovery dispute.

### III. ARGUMENTS AND AUTHORITIES

The Magistrate Judge should reconsider its Order [Doc. 144] pertaining to item no. 6 because the tremendous burden of complying with this discovery request renders item no. 6 unduly burdensome, and the expansive scope of item no. 6 indicates that it is severely disproportionate to the needs of the case and will not result in a production of documents and communications tied to a request that is reasonably calculated to lead to the discovery of admissible evidence. RTR should not be required to undertake this costly, time-consuming, and likely fruitless additional discovery exercise. Without some reasonable restriction in scope to documents related in some way to the transaction that is the subject of this suit, compliance with the literal wording of that item would involve review and production of tens of thousands of emails which have nothing to do with this case. RTR also requests clarification with respect to item no. 1 of the Order, making that reference to the operative 2010 agreement between RTR and Bank of America.

**A.    All Discovery Must be Relevant and Proportional to the Merits of a Legal Claim.**

"Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of

the issues at stake in the action . . . and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). The issues at stake are not sufficient importance to justify discovery of the requested information. The information requested is of low importance to resolving the issues. Evidence is relevant if it makes a fact of consequence "more or less probable than it would be without the evidence." FED. R. EVID. 401. The obligation that discovery be proportional to the needs of the case is incumbent on both counsel and the Court. *Carr v. State Farm Mut. Auto. Ins.*, 312 F.R.D. 459, 468 (N.D. Tex. 2015). Even when a party does not raise a motion, the Court has a responsibility to ensure that discovery remains proportional.

Proportionality "focuses on the marginal utility of the discovery sought." *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088, 2016 U.S. Dist. LEXIS 18460, at *42 (S.D.N.Y. Feb. 16, 2016). "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Id*. "Because relevance is evaluated as part of a proportionality analysis of the requested discovery, **the merits of the claim are considered**." *See Edmondson v. Velvet Lifestyles, LLC*, No. 15-24442-CIV-LENARD/GOODMAN, 2016 U.S. Dist. LEXIS 167564, at *20 (S.D. Fla. Dec. 5, 2016) (emphasis added).

Here, if item no. 6 of the Order is interpreted to include all communications between RTR and Bank of America, then such additional discovery is not proportional to the needs of this case, and forcing RTR to provide the information will serve *no* utility to the case, because SLS is already obtaining all responsive information through the other parts of Judge Stickney's January 9 Order. As set forth in the Declaration of Eric Green, Bank of America engages RTR to service more of Bank of America's numerous mortgage related charged off loans than any other collection agency.

Appendix A, Declaration of Eric Green ("Green Decl."), ¶5. RTR also is in the ongoing process of negotiating with and has proposals outstanding to Bank of America for additional collection services with respect to other types of Bank of America debt. Green Decl. ¶5. These other ongoing business relationships and negotiations between RTR and Bank of America have no relationship with either SLS or the Charged Off Loans which are the subject of this suit. Green Decl. ¶5. It is RTR's understanding that Bank of America has no ongoing servicing or similar interests in the Charged Off Loans since Bank of America transferred the master servicing rights associated with those loans to SLS in February of 2013. Green Decl. ¶5.

As a practical matter, SLS's Motion to Compel [Doc. 65] does not seek to compel RTR to produce any agreements or communications between it and Bank of America other than the agreement to service the Charged Off Loans and communications related to that servicing agreement. *See* SLS's Mot. to Compel [Doc. 65] at 5-6 (PageID 537). And in "refining" the scope of relief sought by its Motion, SLS argued in its Reply to RTR's Response to the Motion to Compel that:

> RTR's agreement and communications with [Bank of America] are relevant to the claims and defenses in this lawsuit because they bear upon: (i) the transfer and termination of RTR's right to collect the [Charged Off] Loans at issue prior to RTR's agreement with SLS; (ii) the standard industry practice of master servicers reserving termination rights when entering collection agreements with sub-servicers such as RTR; and (iii) the intention of the parties with regard to the word "transfer" and the phrase "transferred to the Contractor by the Servicer" in Section 8.2(a) of the parties' 2013 Collection Agreement.

SLS's Reply Brief in Support of Motion to Compel Production of Documents [Doc. 83-1], p. 3. The proposed reconsidered and revised item no. 6 that RTR requests the Magistrate Judge to enter will provides SLS everything that is seeks.

SLS never implied, let alone argued, that it should be permitted to compel RTR to produce documents relating to RTR's many other transactions with Bank of America or the

communications related thereto. In fact, as quoted in paragraph 6 of Section II above, SLS urged the same proportionality objection as a basis to limit RTR's discovery requests. To permit item no. 6 of the Order to reach beyond the scope of the Charged Off Loans and into these transactions and relationships between RTR and Bank of American that have no conceivable relevance or connection to the current litigation, would encompass an estimated number of <u>over 90,000 emails</u> that concern business between Bank of America and RTR that does not relate to: (a) the 2013 Collection Agreement between SLS and RTR; (b) the relationship between SLS and RTR; or (c) communications between Bank of America and RTR that relate to the Charged Off Loans and/or SLS. Green Declaration, ¶6. None of the subject matters in these estimated 90,000 communications concerns the subject matters of this litigation, meaning the issues at stake in this litigation do not justify discovery of these e-mails, because the e-mails are not important in resolving the issues in this lawsuit. *See* FED. R. CIV. P. 26(b)(1).

In contrast, RTR's preliminary review of its documents indicates that communications between RTR and Bank of America relating to: (a) the 2013 Collection Agreement between SLS and RTR; (b) the relationship between SLS and RTR; and (c) communications between Bank of America and RTR that relate to the Charged Off Loans and/or SLS, consist of <u>approximately 100 to 200 emails</u>. Green Decl. ¶6. In contrast, SLS has produced in this case less than a total of 75 emails between: (a) SLS and Bank of America; (b) SLS and Green Tree Servicing; and (c) SLS and Assured Guaranty, Ltd.

The relevant portion of RTR's production thus encompasses .02% of the e-mails that RTR would be forced to produce were item no. 6 not reconsidered. *See* Green Decl. ¶6. Item no. 6 as currently drafted constitutes a directive to produce discovery that is disproportionate to the needs

of the case, and it should be reconsidered to narrow the scope of production to relevant, responsive information, which RTR agrees to provide. *See* FED. R. CIV. P. 26(b)(1).

Also, the scope of communications potentially covered under item 6 of the Order places a burden of expense upon RTR that outweighs the likely benefit to SLS or the trier of fact in this case. As averred by Eric Green:

> Production of the voluminous communications between RTR and Bank of America that have no relationship to the Charged Off Loans or SLS as described above, in addition to having no relationship to the transactions involved in this suit and being subject to contractual confidentiality restrictions, would impose extremely burdensome requirements for RTR. RTR employees and counsel would be required to review each email communication for the purposes of determining content, evaluation for applicable privileges, and responsiveness in compliance with the Order.

Green Decl. ¶ 8. Were RTR forced to comply with item no. 6 absent reconsideration, RTR would need to review every email for privilege and substantially involve Bank of America in these privilege discussions. *See id*. RTR does not believe that it could comply with Judge Stickney's 30-day requirement, and it would likely take as long as 6 months for RTR to comply. Green Dec. ¶8. All for information that is not germane to the material issues in the dispute between SLS and RTR, and that involves RTR's unrelated business that SLS – as a business competitor – has no need to know. Green Decl. ¶ 7; FED. R. CIV. P. 26(b)(1).

Item no. 6 is also disproportionate based upon a review of the other instructions comprising the Order. *See* Doc. 144. Every paragraph in the Order that instructs either RTR or SLS to produce documents and communications – except for item no. 6 – contains language that restricts the production to subject matters or time periods concerning the Collection Agreement between RTR and SLS, the service transfer, or RTR's collection of the Charged Off Loans. *See* [Doc. 144] ¶¶ 1-5, 7, 9-10. Further, all paragraphs instructing RTR to produce documents and communications – except for item no. 6 – are restricted in subject matter to the relationship between RTR and this

litigation. These subject matters include: the agreement between RTR and Bank of America and applicable e-mails (Nos. 1, 2, 3); the assignment of the servicing rights (No. 4); the transfer of the servicing rights (No. 5), emails between RTR and Bank of America relating to the collection of the Charged Off Loans since RTR and SLS executed the Collection Agreement (No. 7). *See id*. ¶¶ 1-5, 7.

Unlike these other paragraphs in the Order, item no. 6 contains no language that limits its subject matter. While that language of item no. 6 subsumes many of the discovery items instructed through item nos. 2, 3, 4, 5, and 7, item no. 6 also is improperly broad to include every discussion that RTR has had with Bank of America – regardless of subject matter – literally 99 percent of which have nothing to do with the litigation or the essential reason that SLS sought to compel discovery. *See* Doc. 144; SLS's Mot. to Compel [Doc. 65] at 5-6 (PageID 537).

Similarly, the scope of item no. 6 pertaining to RTR's communications with Bank of America is disproportionate to the scope of item no. 10 pertaining to SLS's communications with Bank of America. *See* Doc. 144 ¶¶6, 10. The requested narrowed scope of item no. 6 that RTR requests through reconsideration would align the scope of item no. 6 to the scope of item no. 10, would ensure consistency and balance.

RTR respectfully asserts that compelling RTR to produce to SLS communications between the Prior Servicer and RTR since SLS and RTR entered the 2013 Collection Agreement, which are in RTR's possession, custody, or control under the Order is out of any logical proportion to the needs of the case, and involves voluminous communications with no connection or relationship to any of the matters at issue in this litigation. For these reasons, RTR requests Judge Stickney to reconsider item no. 6 of the Order and to narrow its scope as requested herein.

B.  **The Discovery is Unduly Burdensome.**

RTR's debt collection services, both ongoing and being negotiated prospectively, cover charge off debt matters far broader than and unrelated to the Charged Off Loans which are the subject of this litigation. RTR services more mortgage related charge off loans for Bank of America than any other collection agency. Green Decl. ¶5. SLS is a direct competitor of RTR with respect to the performance of debt collection services.  Green Decl. ¶5.

The Charged Off Loans at issue in this litigation represent only a limited portion of the business relationship between RTR and Bank of America, which effectively ended in February 2013, when Bank of America transferred the master servicing rights associated with the Charged Off Loans to SLS. Green Decl. ¶5.  RTR's preliminary analysis of its communications with Bank of America unrelated to this litigation may exceed 90,000 emails. Green Decl. ¶6. In significant contrast, RTR's communications since February 2013 with Bank of America that have any relation to the 2013 Collection Agreement, the relationship between SLS and RTR, and the Charged Off Loans would consist of approximately 200 emails or less.  *Id*.

Accordingly, if the wording of item no. 6 remains without some reasonable limitation to address the broader, unrelated scope of business between RTR and Bank of America, then RTR may be forced to provide to SLS absurdly large amounts of information which bear no conceivable connection to this case and the issues raised herein.  Such an unbalanced and inequitable requirement would result in the production of voluminous irrelevant, non-material information to SLS, and even more detrimental and unfair, RTR would be forced to provide the information to SLS – its direct competitor – even though the information does not relate to the Charged Off Loans. Green Decl. ¶¶ 5-8.

Moreover, the necessary review of those approximate 90,000 emails by RTR personnel who must identify and assemble those emails and also by RTR's legal counsel to assure that

appropriate privileges are invoked and to oversee the production, will involve days of work by an attorney or attorneys. *See* Green Decl. ¶ 8. These expenses of time and money should be avoided, given the expenses will be incurred to produce information that is not relevant to the material issues in this case.

As such, limiting the scope of item no. 6 of the Order as requested herein is appropriate and necessary to avoid imposing undue, unnecessary, and simply time-wasting burden on RTR and its counsel.

C. **Item no. 1 of the Order Should be Revised to Reflect the Correct Agreement.**

Item no. 1 of the Order directs RTR to produce the collection agreement with Bank of America "discussed in Paragraph 9 of RTR's First Amended Complaint." [Doc. 144], p. 1. As RTR has previously stated, and has represented and confirmed to SLS's counsel, the reference in that pleading to a 2008 collection agreement was an inadvertent error. The 2008 General Services Agreement (the "2008 GSA") was superseded and replaced by a 2010 General Services Agreement (the "2010 GSA"). Green Decl. ¶9. More specific terms and provisions relating to the Charged Off Loans that are the subject of this dispute were set forth in a Statement of Work document (the "SOW") between those parties. Green Decl. ¶9. There is only one operating SOW and only one operative General Services Agreement: the 2010 GSA. Green Decl. ¶9.

Accordingly, although incorrectly referenced as a "2008" agreement, the collection agreement that is the subject of and is "discussed in Paragraph 9 of RTR's First Amended Complaint" is the 2010 GSA. In its Response to the Motion to Compel, RTR pointed out that it was the 2010 agreement that would be responsive to SLS's objected to production request. *See* RTR Response to Mot. To Compel [Doc. 70], p. 4 (PageID 611) ("The relevance of the <u>2010 agreement</u> between RTR and the Prior Servicer is only that the agreement exists and was a basis

for RTR's prior servicing of the subject Charged Off Loans"). Moreover, prior to the hearing on the Motion to Compel, RTR produced to SLS's counsel the SOW and portions of the 2010 GSA pursuant to what RTR and its counsel believed was an agreement allowing for some redactions of unrequested portions of the GSA.

RTR's contention was and remains that the Bank of America 2010 GSA has no relevance to the matters at issue in this suit. Nevertheless, RTR reached an agreement with SLS to produce the SOW and requested portions of the 2010 GSA, which is the operative agreement between RTR and Bank of America relating to the Charged Off Loans in February of 2013. RTR therefore requests that item no. 1 of the Order be revised to clarify that it compels production of the 2010 GSA.

## PRAYER

Plaintiff/Counter-Defendants Real Time Resolutions, Inc. respectfully requests that the Court to grant its *Motion for Reconsideration of Order from Judge Magistrate*, to revise item no. 1 of the Order to clarify its reference to production of the 2010 GSA, to limit the scope of item no. 6 of its Order so that it reads as follows:

> RTR shall produce to SLS all communications between Bank of America and RTR since SLS and RTR entered into the 2013 Collection Agreement which are in RTR's possession, custody, or control, relating to: (a) the 2013 Collection Agreement between SLS and RTR; (b) the relationship between SLS and RTR; and/or (c) the relationship between Bank of America and RTR relating to the Charged Off Loans and/or SLS,

and for such other and further relief, both at law and in equity, to which it is justly entitled.

DATED: January 23, 2017					Respectfully submitted,

/s/ *Anthony A. Petrocchi*
Anthony A. Petrocchi
Texas Bar No. 15851700
tpetrocchi@petrocchilaw.net
**ANTHONY A. PETROCCHI, P.C.**
5127 Spyglass Drive
Dallas, Texas 75287
Telephone: (214) 797-2049
Facsimile: (214) 594-8205

- and -

/s/ *Jonathan R. Childers*
Michael P. Lynn
Texas Bar No. 12738500
mlynn@lynnllp.com
Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
Jonathan R. Childers
Texas Bar No. 24050411
jchilders@lynnllp.com
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

**ATTORNEYS FOR PLAINTIFF/COUNTER-DEFENDANT REAL TIME RESOLUTIONS, INC.**

## CERTIFICATE OF CONFERENCE

As set forth above, counsel for RTR discussed these issues in an effort to resolve this matter amicably.  On January 16 and 17, 2017, RTR requested SLS to accept the narrowing language which is the subject of the foregoing Motion.  Although SLS's counsel indicated a willingness to address this matter as requested, asking for and receiving a detailed email setting out the matters in the foregoing Motion, SLS did not respond until the afternoon of January 23, 2018, requiring production of additional matters, the scope of which modifications RTR does not have sufficient time to evaluate or respond to before meeting the current filing deadline. RTR will continue in its good faith efforts to explore the possibility of amicable resolution of this discovery dispute.

/s/ *Anthony A. Petrocchi*
Anthony A. Petrocchi

## CERTIFICATE OF SERVICE

I certify that on January 23, 2018, a true and correct copy of the foregoing was served on all counsel of record via the Court's ECF system and e-mail.

/s/ *Anthony A. Petrocchi*
Anthony A. Petrocchi