IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **REAL TIME RESOLUTIONS, INC.,** | § § | |
| **Plaintiff/Counter-Defendant,** | § § | |
| V. | § § | Civil Action No. 3:16-cv-00608-L |
| **SPECIALIZED LOAN SERVICING LLC,** | § § § § | |
| **Defendant/Counter-Plaintiff.** | § § | |

**REAL TIME RESOLUTIONS, INC.'S REPLY BRIEF ADDRESSING SPECIALIZED LOAN SERVICING LLC'S SUPPLEMENTAL APPENDIX**

Plaintiff/Counter-Defendant Real Time Resolutions, Inc. ("RTR" or "Plaintiff") files this *Reply Brief Addressing Specialized Loan Servicing LLC's Supplemental Appendix*,[1] showing as follows:

**I.
SUMMARY OF ARGUMENT**

SLS manufactures ambiguity in Section 8.2(a) of the Collection Agreement where there is none. SLS originally stated that the Collection Agreement was unambiguous, and it only invented an argument that Section 8.2(a) is ambiguous upon reflection that its theory under Section 8.1 fell short. SLS has never offered an alternative reading of Section 8.2(a) that ascribes meaning to the phrase "transferred to the Contractor by the Servicerbrian" as required by New York law, and the materials provided by SLS through its Supplemental Appendix do not support ambiguity.

**II.**

---

[1] Although RTR's brief filed on April 9 is titled a "Response," *see* Doc. 155, that brief functions as an opening brief, then SLS's "Reply" filed on April 13 functions as a response, *see* Doc. 156, and this brief functions as a reply.

---

## ARGUMENT & AUTHORITIES

1. **Green meant what he said, and the January 3-4, 2013 e-mail does not document or evidence the transfer of any loans by SLS.**

Green did not use the words "transfer of the loans" in the January 3-4, 2013 e-mail to refer to a transfer of servicing rights, but rather, that he was not included in the discussions regarding the "transfer of *loans*." RTR's Objs. to Matls in Am. Reply Br. [Doc. 105] at 5 (emphasis added) (PageID 3288, 3310-11).

The Collection Agreement defines SLS as the Servicer. *See* RTR's Resp. Br. [Doc. 93] at 5 (PageID 2969, 1688). It requires SLS to follow prerequisite steps before a transfer of loans may occur. *See* RTR's Reply to RTR's MSJ [Doc. 111] at 11-14 (PageID 3347-50). These steps were taken by Bank of America and were never taken by SLS. *Id*. Accordingly, this must mean that SLS never transferred any loans to RTR as provided by a plain reading of the Collection Agreement, and Bank of America was the only party that did.

SLS uses the January 3-4 e-mail as a substitute for evidence that it transferred loans to RTR, because SLS has not and cannot provide any evidence that such a transfer took place. This is because SLS never transferred a single loan to RTR. *See* RTR's Resp. Br. [Doc. 93] at 21-23 (PageID 2985-87); RTR's Reply to RTR's MSJ [Doc. 111] at 12 (PageID 3348). Green meant what he said in the January 3-4 e-mail, and any suggestion by SLS to the contrary is untrue, cannot be proven or corroborated by SLS, and is also irrelevant. SLS's argument is irrelevant because, even if it were true (which it is not), such argument – as well as the January 3-4 e-mail – does not constitute any of the steps necessary to document a transfer of Loans. Therefore, the e-mail still does not show that SLS transferred loans. *See id*.

Because SLS never took any of these Loan transfer steps, the January 3-4 e-mail exists as an irrelevant substitute designed to deflect the weakness of SLS's argument. To make matters

worse for SLS, because SLS is the moving party on the issue, Green's statement and testimony must be viewed in the light most favorable to RTR, which means that Green meant what he said and SLS is simply wrong in its assertion. *See Crescent Tow. & Salv. Co., Inc. v. M/V Anax*, 40 F.3d 741, 743 (5th Cir. 1994) (explaining court must view the facts and inferences in the light most favorable to the non-movant).

### 2. SLS knows that it never transferred loans to RTR.

SLS based its 2015 Non-Extension Notice exclusively "pursuant to <u>Section 8.1(a)</u>," which is the end of Term provision in the Collection Agreement. RTR MSJ App. [Doc. 82-2] 127-28 (PageID 1799-1800) (emphasis added).

The only notice that SLS sent under Section 8.2 optional termination occurred in 2013, and that notice covered <u>only some unidentified</u> portion of the Loans that RTR was collecting. *See* RTR's Resp. Br. [Doc. 93] at 7, 22 (PageID 2971, 86); RTR's Reply to RTR's MSJ [Doc. 111] at 7 (PageID 3343). SLS never sent RTR a termination notice under Section 8.2 for the remainder of the Loans because it knew that notice would be as ineffective as the first. *See id*. This is because Section 8.2(a) limits SLS's termination rights to only those loans that it transferred to RTR, and SLS chose not to transfer any. *Id.* Brian Skidmore (senior vice president of charge off collections for SLS) literally signed-off on Section 8.2(a)'s limiting language by adding his name to the "transferred to the Contractor by the Servicerbrian" provision. *See* RTR's Resp. Br. [Doc. 93] at 28-29 (PageID 2992-93); RTR's Reply to RTR's MSJ [Doc. 111] at 8-9 (PageID 3344-45).

Moreover, Toby Wells (SLS's CEO) also knew that SLS did not transfer Loans to RTR because he admitted that SLS never possessed the Loans that RTR was collecting. *See* RTR's Resp. to Suppl. Appx. [Doc. 155] at 4 & App. 8-9 (PageID 3808, 20-21). SLS cannot transfer what it never possessed. *Id*.

### 3. Only RTR's position remains consistent.

To manufacture its new found ambiguity, SLS requests the court to ignore pertinent evidence and has changed its sworn statements. First, SLS skips over the conversation between Green and Ali Haralson (SLS's former Chief of Operations). *See* RTR's Supplement [Doc. 154] at App. 324-327 (PageID 3797-3800); RTR's Reply to RTR's MSJ [Doc. 111] at 18 (PageID 3354). Second, SLS skips over SLS's completed transfer of loans to RTR under the CIFG template Agreement – and this shows that SLS indeed knows what a loan transfer means. *See* RTR's Resp. Br. [Doc. 93] at 19 (PageID 2983); RTR's Reply to RTR's MSJ [Doc. 111] at 16-17 (PageID 3352-53).

Third, to date, SLS has never provided the court a reasonable interpretation of what loans "transferred to the Contractor by the Servicerbrian" means, which SLS was required to provide under New York law before it can assert ambiguity. *See* RTR's Resp. Br. [Doc. 93] at 13 (PageID 2977); RTR's Reply to RTR's MSJ at 3, 7-8 [Doc. 111] (PageID 3339, 43-44); *Sayers v. Rochester Tel. Corp. Suppl. Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir 1993).

Fourth, SLS swapped-out its original sworn interrogatory responses for ones that more accommodated its new theory shortly before its summary judgment filing, because its original sworn responses proved RTR's point that only Bank of America transferred Loans to RTR. *See* SLS's Orig. & First. Am. Resp. to Rog 3 (PageID 3071, 3076) (swearing all of the Charged Off Loans "***were previously transferred or delivered*** to RTR by [Bank of America]") (emphasis added). SLS similarly retreats from its sworn statement that "***every loan RTR services for SLS***" was "***previously transferred or delivered to RTR by [Bank of America].***" *Id.* at Rog 1 (PageID 3070, 3075) (emphasis added).

Finally, SLS did not plead Section 8.2(a) as a basis for termination, or that it was even ambiguous – something SLS would have done had it truly believed it was not limited by Section 8.2(a) – for good reason.  *See* RTR's Reply to RTR's MSJ [Doc. 111] at 6 (PageID 3342); RTR's Objs. [Doc. 101] at 6 (PageID 3179).  In one of the few interrogatory responses that remains unchanged, SLS still swears under oath that Section 8.2 contains "limiting language" that unambiguously restricts its ability to optionally terminate RTR.  RTR's Resp. App. [Doc. 93] at 381 (Rog. 5) (PageID 3080).

## PRAYER

Plaintiff/Counter-Defendant Real Time Resolutions, Inc. respectfully requests the Court to grant its Motion for Summary Judgment [Doc. 80] as to each claim and ground requested therein; to deny SLS's Motion for Partial Summary Judgment [Doc. 76]; and to grant RTR such other and further relief, both at law and in equity, to which it is justly entitled.

Dated: May 2, 2018                     Respectfully submitted,

/s/ *Anthony A. Petrocchi*
Anthony A. Petrocchi
tpetrocchi@petrocchilaw.net
**ANTHONY A. PETROCCHI, P.C.**
5127 Spyglass Drive
Dallas, Texas 75287
Telephone: (214) 797-2049
Facsimile:  (214) 594-8205

- and -

/s/ *Jonathan R. Childers*
Michael P. Lynn
Texas Bar No. 12738500
mlynn@lynnllp.com
Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
Jonathan R. Childers
Texas Bar No. 24050411
jchilders@lynnllp.com
**LYNN PINKER COX & HURST LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

**ATTORNEYS FOR PLAINTIFF/COUNTER-DEFENDANT REAL TIME RESOLUTIONS, INC.**

## CERTIFICATE OF SERVICE

I certify that on May 2, 2018, a true and correct copy of the foregoing was served on all counsel of record via the Court's ECF system and e-mail.

*/s/ Jonathan R. Childers*
Jonathan R. Childers