## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **REAL TIME RESOLUTIONS, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:16-CV-00608-L** |
| | § | |
| **SPECIALIZED LOAN SERVICING** | § | |
| **LLC,** | § | |
| | § | |
| Defendant. | § | |

### <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are: (1) Defendant Specialized Loan Servicing LLC's ("Defendant" or "SLS") Motion for Partial Summary Judgment (Doc. 76), filed May 17, 2017; (2) Plaintiff Real Time Resolutions, Inc.'s ("Plaintiff" or "RTR") Motion for Summary Judgment (Doc. 80), filed May 17, 2017; (3) RTR's Objections to Specialized Loan Servicing, LLC's Summary Judgment Materials, Motion to Strike, and Brief in Support (Doc. 93), filed June 8, 2017; (4) RTR's Objections to Defendant's Responsive Summary Judgment Materials, Motion to Strike, and Brief in Support (Doc. 101), filed June 21, 2017; and (5) RTR's Objections to Materials in SLS's Amended Reply Brief, Motion to Strike, and Brief in Support (Doc. 105), filed July 5, 2017.

After considering the motions, briefs, responses, replies, evidence, record, and applicable law, the court **grants** SLS's Motion for Partial Summary Judgment (Doc. 76); **denies** RTR's Motion for Summary Judgment (Doc. 80); and **sustains in part** and **overrules in part** RTR's Objections to SLS's summary judgment evidence (Docs. 93, 101, 105). To the extent applicable, any objections to RTR's summary judgment evidence asserted by SLS are also **overruled as moot.**

**Memorandum Opinion and Order – Page 1**

## I.     Factual and Procedural Background

This dispute arises out of a mortgage loan collection agreement (the "Collection Agreement" or "Agreement") between SLS and RTR, under which SLS was the master servicer and RTR was the subcontractor for a number of Charged Off Loans (the "Charged Off Loans").[1] From about 2008 to 2013, prior to the execution of the Collection Agreement with SLS, RTR collected the Charged Off Loans, which were transferred to it for collection by Bank of America, under a prior collection agreement between the entities.  Under that agreement, Bank of America was the master servicer and RTR was a subcontractor.

On February 1, 2013, Bank of America assigned its master servicing rights to SLS, which included the Charged Off Loans at issue here.  Effective that same day, RTR and SLS entered into the Collection Agreement to establish the parties' rights and obligations with respect to the newly-reassigned Charged Off Loans.  The Collection Agreement was to remain in effect for a one-year term and automatically renew each year unless terminated by the parties in a manner permitted under the Agreement. The Collection Agreement also authorized RTR to continue performing collection services for the Charged Off Loans, as it did in its prior agreement with Bank of America.  It also enabled SLS to transfer new loans to RTR for collection. During the parties' contractual relationship, SLS did not transfer any new loans to RTR.  Thus, the only loans at issue are the Charged Off Loans originally designated by Bank of America and reassigned to SLS.

---

[1] "Charged Off Loans" are loans that the owner or servicer deems to be materially delinquent such that the debt owed is unusually difficult to collect. Section 1.14 of the Collection Agreement defines "Loans" as "the Mortgage Loans currently being serviced by the Servicer," in this case, SLS, under the Agreement. Pl.'s App., Doc. 82 at 25.  "Charged Off Loan" are defined in Section 1.4 of the Agreement as "each Loan designated by the Servicer or any prior Servicer as a Charged Off Loan in accordance with the provisions of the applicable [pooling and servicing agreements], or otherwise has been delivered to the Contractor [RTR] by the Servicer [SLS] or any prior Servicer for collection." *Id.* at 24. The servicing rights to the Charged Off Loans are severed from the ownership rights, and, in this case, the owner of the Charged Off Loans at issue is an entity that is not a party to this dispute.

On April 26, 2013, during the original one-year term of the Collection Agreement, SLS sent a letter to RTR with the subject line, "Notice of Optional Termination of Certain Charged Off Loans" ("2013 Termination Notice"). Pl.'s App., Doc. 82-2 at 7.[2] SLS advised RTR that, pursuant to Section 8.2(a) of the Collection Agreement, it was terminating the Agreement "with respect to the Charged Off Loans listed on Schedule 1 hereto[,]" effective June 1, 2013.[3] *Id*. The letter also stated that, "SLS further appreciates [RTR's] assistance in effecting an orderly transfer of the Terminated Loans to SLS and [RTR's] compliance with the transfer instructions that will be provided to [it] separately." *Id*. RTR declined to honor and comply with SLS's letter because it did not believe SLS had the authority under Section 8.2(a) to take this action with respect to the Charged Off Loans. Then, on June 21, 2013, RTR filed a lawsuit in Dallas County, Texas, to contest the validity of SLS's 2013 Termination Notice.  The lawsuit was subsequently dismissed,[4] and RTR continued to collect the Charged Off Loans.

On December 31, 2015—31 days[5] before the expiration of the term of the Collection Agreement—SLS sent another letter to RTR, with the subject line "Notice of Non-Extension of Term" (the "2015 Non-Extension Notice"). In this letter, SLS informed RTR that, pursuant to

---

[2] For reference, the court cites to the parties' summary judgment appendices using the ECF page numbers rather than the party-created appendix page numbers.

[3] SLS's attempt to terminate under Section 8.2(a) only applied to a select portion of the Charged Off Loans covered under the Collection Agreement.

[4] After RTR filed its lawsuit challenging the 2013 Termination Notice, the parties attempted to resolve their dispute and, in doing so, SLS extended the 2013 SLS Termination Notice until May 1, 2014. It appears, however, that no further action was taken after this extension and, thus, pursuant to the Collection Agreement, the Agreement automatically renewed and was in effect, at least, until this dispute arose.

[5] The court calculated the number of days between December 31, 2015, and January 31, 2016—the last date of the term based on the February 1, 2013 execution date of the Collection Agreement, and pursuant to the language set forth in Section 8.1(a) requiring written notice of a non-extension "at least thirty (30) days before the end of an extension term."

Section 8.1(a), it elected not to extend the Collection Agreement for a subsequent term. Specifically, the letter stated, in pertinent part:

> Pursuant to Section 8.1(a) of the Agreement, SLS hereby provides its written notice that it elects not to extend the term of the Agreement. Accordingly, the Agreement will terminate on January 31, 2016. SLS appreciates RTR's collection activities and its assistance in effecting an orderly transfer of all loans to SLS on or by March 1, 2016, as well as RTR's compliance with the transfer instructions that will be provided to RTR separately.

Pl.'s App., Doc. 82-2 at 9. As with the previous letter sent by SLS, RTR declined to honor and comply with the 2015 Non-Extension Notice based on its interpretation of Section 8.1(b), which it contends precludes SLS from optionally and unilaterally terminating the Agreement with respect to the Charged Off Loans.

On January 25, 2016, RTR filed this action in the 162nd Judicial District Court of Dallas County, Texas.  On March 3, 2016, SLS removed this action to federal court based on diversity jurisdiction. On March 8, 2017, RTR filed its First Amended Complaint (Doc. 58) ("First Amended Complaint"), alleging a breach of contract claim and seeking three grounds for declaratory judgment relief relating to the validity of the 2015 Non-Extension Notice and the current status of RTR's collection rights under the Collection Agreement. Pl.'s First Am. Compl., Doc. 58 at 12-13. On April 5, 2017, SLS filed its Answer to RTR's First Amended Complaint (Doc. 63), alleging counterclaims against RTR for breach of contract and seeking a declaratory judgment that the 2015 Non-Extension Notice effectively terminated the Collection Agreement with respect to the Charged Off Loans at issue. Def.'s Answer, Doc. 63 at 12.

On May 17, 2017, SLS filed its Motion for Partial Summary Judgment (Doc. 76), requesting that the court dismiss with prejudice RTR's first two requests for declaratory relief as alleged in the First Amended Complaint and grant as a matter of law SLS's request for declaratory relief that the 2015 Non-Extension Notice effectively terminated the Collection Agreement,

effective January 31, 2016. That same day, RTR filed its Motion for Summary Judgment (Doc. 80), requesting that the court grant as a matter of law all three of its requests for declaratory judgment relief asserted in its First Amended Complaint; grant summary judgment with respect to its breach of contract claim, to the extent it alleges SLS breached the contract by demanding that it transfer the Charged Off Loans to SLS;[6] and dismiss with prejudice SLS's counterclaims for breach of contract and declaratory relief.

The court now sets forth the disputed contractual provisions regarding termination of the Collection Agreement. Article VIII (Sections 8.1 through 8.6) of the Collection Agreement governs Termination. Pl.'s App., Doc. 82 at 34-36. The parties dispute the meaning and effect of Sections 8.1(a)-(b), which state as follows:

> 8.1    Term. (a) This Agreement shall continue in full force and effect for an original term (the "**Original Term**") of one (1) year from the date hereof, unless terminated sooner by mutual agreement or otherwise in accordance with Sections 8.2 or 8.3 of the Agreement. The term of this Agreement shall automatically be extended for successive one (1) year terms (each an "**Extension Term**") unless the Servicer delivers written notice to Contractor, or Contractor delivers written notice to Servicer, at least thirty (30) days before the end of, as applicable, (a) the Original Term or (b) any Extension Term of their or its election not to extend the term.

> (b)    Notwithstanding the foregoing, all rights and obligations of the Contractor and the Servicer hereunder with respect to a Charged Off Loan for which the Contractor is performing the Obligations at the time of the expiration of the Term in accordance with Section 8.2 or Section 8.3 shall survive such expiration and the Contractor shall continue to perform the Obligations with respect to any such Charged Off Loan in accordance with the terms of this Agreement until otherwise terminated pursuant to the terms hereof.

Pl.'s App., Doc. 82 at 34. The parties make no assertion that they entered into a mutual agreement to terminate the Collection Agreement during the Term, or that RTR defaulted pursuant to Section 8.3.  Instead, at the center of the dispute is the language of Sections 8.1(a) and (b), and the

---

[6] RTR is not seeking summary judgment on the portion of its breach of contract claim that alleges SLS breached the Agreement by interfering with its authority under the Agreement to collect proceeds through foreclosure actions. Pl.'s Mot. for Summ. J. Br., Doc. 81 at 23 n.4.

**Memorandum Opinion and Order – Page 5**

applicability of the written notice of non-renewal pursuant to Section 8.1(a) with respect to the Extension Term.

The parties also dispute the meaning and effect of Section 8.2, which governs the extent to which a party can unilaterally and optionally terminate the agreement with respect to the Charged Off Loans.[7] Section 8.2 states:

> 8.2    Optional Termination. (a) This Agreement may be terminated without cause by the Servicer with respect to any Charged Off Loan or all Charged Off Loans, in either case, transferred to the Contractor by the Servicerbrian,[8] on thirty (30) days written notice to the Contractor.   In the event the Contractor receives timely written notice pursuant to this Section 8.2, the Contractor shall be entitled to reimbursement from the Servicer of:
>
> > (i)    all reasonable out of pocket expenses actually incurred in connection with the transfer of the Data to any successor contractor or to the Servicer;
> >
> > (ii)    reimbursement for any unreimbursed Ancillary Charges with respect to such terminated Charged Off Loans; provided that the Contractor has provided the Servicer with an itemized invoice detailing each such expense within thirty (30) days of the related termination; and
>
> (b)    The Contractor may elect to terminate this Agreement by giving notice to the Servicer in the same manner espoused in Section 8.2(a).
>
> (c)    In addition, upon ten (10) days prior written notice to the Contractor, the Servicer may terminate, at its sole option, this Agreement with respect to some or all of the Charged Off Loans with respect to which the Contractor has classified as in-active in its monthly report in accordance with Section 3.2 hereof.

---

[7] RTR contends that, despite SLS's assertions, Section 8.2(a) is not at issue here because SLS's 2015 Non-Extension Notice was based on Section 8.1(a), not 8.2(a).  It nonetheless presents arguments with respect to this provision in response to SLS's contentions that Section 8.2(a) is applicable to the court's determination of the summary judgment motions.

[8] The parties agree that "Servicerbrian" is a typographical error that resulted from red-line edits made with track changes, which the parties accidentally overlooked prior to executing the Agreement. The parties also agree that the word was intended to be "Servicer" and refers to SLS. The court will, therefore, reference the provision as if it had been written with the term "Servicer."

**Memorandum Opinion and Order – Page 6**

Pl.'s App., Doc. 82 at 34. Specifically, with respect to this section, the parties dispute the meaning of the phrase, "any Charged Off Loan or all Charged Off Loans, in either case, transferred to the Contractor by the Servicer[]," and its applicability, if any, to Sections 8.1(a) and (b).

In considering these provisions, RTR contends that, based on its interpretation of Sections 8.1(a) and 8.2(b), the 2015 Non-Extension Notice could not terminate the Agreement or its collection rights. Specifically, with respect to Section 8.1(b), it asserts that this section "unambiguously equips [it] with a 'surviv[al] right' mandating it to 'continue to perform' collections on those Charged Off Loans which RTR was collecting at the time the term ends" until "otherwise terminated." Pl.'s Mot. for Summ. J. Br., Doc. 81 at 9, 31. Thus, RTR contends that the 2015 Non-Extension Notice did not terminate the entire Collection Agreement and, therefore, it is entitled to continue collecting on the Charged Off Loans despite SLS's non-renewal notice. *Id*. at 9. Alternatively, RTR contends that even if the court determines that SLS terminated the Term of the Collection Agreement pursuant to Section 8.1(a), the 2015 Non-Extension Notice did not terminate the survival of its collection rights under Section 8.1(b).

SLS does not address or present to the court its interpretation of Sections 8.1(a) and (b). Instead, it contends that RTR's interpretation of Section 8.1(b) "would, for all practical purposes, render § 8.1(a) meaningless and result in SLS not having the right to terminate its relationship with RTR at the end of each one-year term—a construction that conflicts with the purpose of giving the Agreement a limited term period in the first place." Def.'s Resp. to Pl.'s Summ. J. Mot., Doc. 92 at 22. It further asserts that while most of the Collection Agreement is unambiguous, the phrase, "transferred to the Contractor by the Servicer[]," used in Section 8.2(a) is ambiguous. Moreover, it asserts that RTR's construction of Section 8.2(a) is "unreasonably-narrow" and would grant RTR an "essentially-perpetual right to collect the Loans, which SLS could not optionally terminate, whose one-year term would automatically renew with regard to the Loans . . . [and would give]

RTR [only] the unilateral right to stop collecting the Loans at its discretion." SLS's Mot. for Summ. J., Doc. 77 at 13-15.

## II.     Applicable Legal Standards

### A.     Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could

not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## B.    Declaratory Judgment Standard

Under the Declaratory Judgment Act, a party may bring an action in federal court seeking a declaration of such party's "rights and other legal relations." *See* 28 U.S.C. § 2201. Pursuant to "[t]he Declaratory Judgment Act . . . federal courts [are authorized] to declare the rights and other legal relations of any interested party seeking such declaration.*" Val-Com Acquisitions Trust v. Chase Home Fin., L.L.C.*, 434 F. App'x 395, 395 (5th Cir. 2011) (citations omitted). "[A] declaration may issue only to resolve an actual controversy between the parties. An actual

controversy is a dispute that is definite and concrete, touching the legal relations of parties having adverse legal interests." *Id*. (citations omitted). Also, "[t]he controversy must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Id*. at 395-96 (citations omitted). Further, the "plaintiff[ ] ha[s] the burden of establishing the existence of an actual controversy under the Act." *Id*. at 396 (citations omitted). The Act "confers discretion on the courts [to grant declaratory relief] rather than an absolute right on a litigant [to such relief]." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995).

### C.    Contract Interpretation Under New York Law

The parties agree that New York law governs this dispute, as provided by Section 9.6 of the Collection Agreement. Under New York law, the initial question for the court on a motion for summary judgment with respect to a contract claim is "whether the contract is unambiguous with respect to the question disputed by the parties." *Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010) (*quoting International Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002)). "[A]n interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.'" *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) (quoting *Garza v. Marine Transport Lines, Inc.*, 861 F.3d 23, 27 (2d Cir. 1988)).

A contract is unambiguous when its words "have a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Feld Motor Sports, Inc. v. Traxxas, L.P.*, 861 F.3d 591, 598 (5th Cir. 2017) (quoting *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (1978)). If a court determines that a contract is unambiguous, "its meaning is likewise a question of law for the court to decide." *Id.* at 598 (quoting *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir.

2009)). "The court looks only within the four corners of an unambiguous contract to discern its meaning." *Id*. (citing *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 244 (2014)). "[A] written agreement that is complete, clear and unambiguous on its face must be [interpreted] according to the plain meaning of its terms, without the aid of extrinsic evidence." *Law Debenture Trust Co. of New York*, 595 F.3d, at 467-68 (citations and quotation marks omitted). Accordingly, a court "must examine the parties' obligations and intentions as manifested in the entire agreement and seek to afford the language an interpretation that is sensible, practical, fair, and reasonable." *MPEG LA, LLC v. Samsung Electronics Co.*, 86 N.Y.S.3d 4, 8 (N.Y. App. Div.), *leave to appeal denied*, 32 N.Y.3d 912 (2018) (citations omitted).

"[T]he question of whether a written contract is ambiguous is a question of law for the court." *Feld Motor Sports, Inc.*, 861 F.3d at 597 (quoting *JA Apparel Corp*., 568 F.3d at 396). A contract is ambiguous when "its terms are subject to more than one reasonable interpretation." *Id*. at 598 (quoting *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, 25 N.Y.3d 675, 680 (2015)). "Language in a contract is ambiguous when it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Id*. (quoting *JA Apparel Corp.*, 568 F.3d at 396-97 (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000)).

"[W]here the contract language creates ambiguity, extrinsic evidence as to the parties' intent may properly be considered. Where there is such extrinsic evidence, the meaning of the ambiguous contract is a question of fact for the factfinder." *JA Apparel*, 568 F.3d at 397 (citations omitted). "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation, unless each is a reasonable interpretation." *Law Debenture Trust Co. of New York*, 595 F.3d at 467 (citations omitted). "Thus,

the court should not find the contract ambiguous [when] the interpretation urged by one party would strain the contract language beyond its reasonable and ordinary meaning." *Id*. (citation and quotation marks omitted).

> As the court held in *Law DebentureTrust Co. of New York*:
>
> When the parties have used contract terms which are "in common use in a business or art" and have "a definite meaning understood by those who use them," but which "convey no meaning to [t]hose who are not initiated into the mysteries of the craft," the parties, in order to have the court construe their contracts, "must furnish [the court] with the dictionaries they have used."

595 F.3d at 466 (quoting *Fox Film Corp. v. Springer*, 273 N.Y. 434, 436 (1937)). Proof of custom and usage consists of proof that the language in question is "fixed and invariable in the industry in question." *Id*. (quoting *Hutner v. Greene*, 734 896, 900 (2d Cir. 1984) (citation omitted). "In such circumstances, the court 'must be informed of the meaning of the language as generally understood in that business, in the light of the customs and practices of the business.'" *Id*. (quoting *Fox Film Corp.*, 273 N.Y. at 437).

## III.    RTR's Motion for Summary Judgment[9]

### A.    RTR's Motion for Summary Judgment on Its Claims for Declaratory Relief

RTR moves the court to grant summary judgment on its claims for declaratory relief, requesting that the court declare the following:

(1)    The 2015 SLS Non-Extension Notice pursuant to Section 8.1(a) does not require RTR to transfer any Charged Off Loans to SLS for collection;

(2)    The 2015 SLS Non-Extension Notice, to the extent it seeks transfer of the Charged Off Loans to SLS for collection, contradicts the terms and provisions of the Collection Agreement and, therefore, is null, void, and of no force or effect;

(3)    Under the Collection Agreement, RTR has the exclusive right to carry out the Obligations by taking any and all actions negotiated for and contained in

---

[9] As RTR raises more claims for consideration on summary judgment, and its requests for summary judgment overlap with those of SLS, the court will address RTR's Motion for Summary Judgment first.

> Sections 3.1, 3.4, and the integrated Limited Power of Attorney, including the right to litigate in connection with and foreclose upon properties that serve as security for some of the Charged Off Loans, as well as to earn its fee upon the generation of other types of Proceeds collected from a Borrower or other parties. RTR's exclusive rights include (a) the right to foreclose upon properties serving as security for the Charged Off Loans, and (b) the authority to perform and to receive Proceeds as set forth in Sections 3.4 and 1.17 of the Collection Agreement.

Pl.'s Mot. for Summ. J. Br., Doc. 81 at 22-23.

### 1.   RTR's First Request for Declaratory Judgment Relating to 2015 Non-Extension Notice

#### a.   Parties' Contentions

In its first request for declaratory relief, RTR seeks a declaration from the court that the 2015 SLS Non-Extension Notice does not require RTR to transfer any Charged Off Loans to SLS for collection.  As previously described, SLS sent a letter to RTR on December 31, 2015, seeking to invoke Section 8.1(a) as a basis for termination of the Collection Agreement. Pl.'s App., Doc. 82-2 at 9. The letter stated that SLS, pursuant to Section 8.1(a), was giving "its written notice that it elect[ed] not to extend the term of the Agreement," resulting in a termination date of January 31, 2016 (the last day of the one-year renewable term), and instructed RTR to transfer all Charged Off Loans to SLS on or by March 1, 2016. *Id*.   RTR asserts that, under the rules of contract construction, SLS improperly invoked Section 8.1(a) as a sole basis for terminating RTR's collection rights, without considering the effect of Section 8.1(b). It also construes Section 8.1(b) as placing a limitation upon SLS's right to demand unilaterally that RTR transfer the Charged Off Loans to SLS because it construes 8.1(b) as a "survival right" that enables it to continue collecting the Charged Off Loans "unless *otherwise terminated* pursuant to the terms hereof." Pl.'s Mot. for Summ. J. Br., Doc. 81 at 27.  In explaining the phrase "otherwise terminated," RTR asserts that its

survival rights can only be "otherwise terminated" pursuant to six circumstances set forth in Sections 8.2 and 8.3,[10] and that none of the circumstances apply here. *Id*. at 18.

In further support of its interpretation of Section 8.1(b), RTR highlights that Section 8.1(b) immediately follows Section 8.1(a) and begins with the phrase "[n]otwithstanding the foregoing[.]" *Id*. at 28-29. It contends that, under New York law, "notwithstanding the foregoing" means that the words following that phrase override all inconsistent language that precedes it. *Id*. at 29 (string citations supporting this proposition omitted). RTR, therefore, argues that the phrase "notwithstanding the foregoing" as used in the Collection Agreement means "despite the foregoing," and contends that the term "foregoing" refers to the language found in Section 8.1(a). *Id*. Taking this approach, it asserts that SLS's invocation of 8.1(a) in the 2015 Non-Extension Notice—without reference to the "survival right" contained in 8.1(b)—"[a]t most" ended the Term, but "does not speak to RTR's ability, through its 8.1(b) survival rights, to continue to collect the Charged Off Loans that were designated as charged off and then transferred to RTR for collection by the Prior Servicer." *Id*. In other words, RTR contends that, although the 2015 Non-Extension Notice may have validly ended the extended term of the Collection Agreement, it did

---

[10] RTR specifically argues that there are at least six ways under Sections 8.2 and 8.3 in which the Charged Off Loans could be "otherwise terminated" in light of its survival rights under 8.1(b) and that none of these was properly invoked by the 2015 Non-Extension Notice. First, "[t]ermination could occur upon an event listed in Section 8.3 with respect to one or more Charged Off Loans after written notice and an opportunity to cure, if applicable." Pl.'s Mot. for Summ. J. Br., Doc. 81 at 34. Second, "[t]ermination could occur if RTR provided notice to SLS of its intention to optionally terminate pursuant to Section 8.2(b)." Third, "[u]pon proper written notice to RTR, SLS could terminate solely with respect to Charged Off Loans that RTR has classified as 'in-active' pursuant to Section 8.2(c) of the Collection Agreement." *Id*. Fourth, "[h]ad SLS transferred additional loans to RTR as contemplated by the Collection Agreement, then SLS would be able to terminate RTR's collection of those loans through proper written notice under Section 8.2(a)." *Id*. Fifth, "[t]he loans may be sold by the trustee or, in certain cases, by RTR, and in either case, RTR must relinquish the loans but will earn a fee upon such sale." *Id*. Sixth, "[a]s part of the ongoing performance of RTR's collection obligations, the Charged Off Loans are collected, settled, paid off, discharged in bankruptcy, and otherwise disposed of." *Id*. RTR argues that, because none of these events has occurred, it is entitled to continue collecting the Charged Off Loans, even after SLS's non-extension of the extended term of the Collection Agreement.

not terminate RTR's right to continue collecting the Charged Off Loans pursuant to its survival rights provided in Section 8.1(b). *Id*. at 30.

RTR also highlights that there has been no termination under Section 8.2, which states in pertinent part that the Agreement "may be terminated without cause by the Servicer with respect to any Charged Off Loan or all Charged Off Loans, in either case, *transferred to the Contractor by the Servicer*, on thirty (30) days written notice to the Contractor". Pl.'s App., Doc. 82 at 34 (emphasis added). It also contends that Section 8.2(a) is inapplicable to the Charged Off Loans at issue because the loans were transferred by Bank of America—not by SLS—to RTR for collection, and this provision provides for optional termination only with respect to new loans transferred by SLS to RTR that were not previously serviced by RTR for Bank of America. Thus, it asserts that, because SLS chose not to designate and transfer additional loans to RTR for collection during the parties' contractual relationship, SLS was not entitled to "otherwise terminate" its collection rights with respect to the Charged Off Loans at issue pursuant to Section 8.2(a).

Additionally, RTR highlights that there has been no termination under Section 8.3 "because that section addresses a termination due to certain enumerated RTR defaults, and it is undisputed that none of these defaults has occurred." Pl.'s Mot. for Summ. J. Br., Doc. 81 at 19, 31. It also notes that SLS has never sent RTR a notice of default and, even if it had, RTR would be afforded an opportunity to cure. *Id*. For these reasons, RTR asks the court to grant summary judgment with respect to its first request for declaratory judgment.

In its Response, SLS asserts that, while most of the Collection Agreement is unambiguous, the specific phrase RTR relies upon in its attempts to limit the Loans SLS may terminate under the Agreement, and, thus, nullify the termination provisions, is ambiguous. It, nonetheless, contends that the parties' intentions can be ascertained from their negotiations.  First, SLS contends that Section 8.2(a), which governs "Optional Termination," specifically evidences

an intent by the parties to enable SLS, the servicer, "to terminate without cause any Charged Off Loan or all Charged Off Loans, in either case, transferred to the Contractor by the Servicer[], on thirty (30) days written notice to the Contractor." Def.'s Resp. to Pl.'s Mot. for Summ. J., Doc. 92 at 9 (quoting Section 8.2(a) of the Collection Agreement).  In interpreting this section, it contends as follows:

> The words "in either case" refer to the preceding phrase "any Charged Off Loans." If the phrase "transferred to the Contractor by the Servicerbrian [sic]" was intended to exclude any loans previously transferred or collected by RTR, then there would be no scenario in which SLS could optionally terminate "all Charged Off Loans." This is true because the Loans previously collected by RTR are the only loans that were ever covered by the Agreement. And, even if SLS had transferred additional Charged Off Loans to RTR under the agreement, the Loans previously collected by RTR would still be encompassed in the phrase "all Charged Off Loans." RTR's contention that the Agreement's Optional Termination provision applied to some loans but not the others directly conflicts with the provision's plain language.

*Id.* at 9-10.  Thus, with respect to RTR's argument that the term "transferred to the Contractor by the Servicer" precludes SLS from terminating the Charged Off Loans because Bank of America transferred the loans to RTR, and, accordingly, precludes it from terminating the entire Agreement with respect to this Loans, SLS contends that RTR's construction of the word "transfer" is unreasonably narrow for three reasons.  Specifically, it asserts that: (1) "RTR's collection rights were derived from Bank of America's master servicing rights, which were transferred to SLS, and RTR had no right to continue collecting the loans but for the fact that SLS transferred a subset of *its* master servicing rights to RTR under the Agreement"; (2) "the word 'transfer' was not a defined term under the Agreement so as to impart such an unusually-narrow meaning as would be assigned by RTR"; and (3) RTR's Chief Executive Officer, Eric Green, during his deposition, made a statement that the word "transfer" "could mean many things in many instances." *Id.* at 11-12. It further asserts that even if RTR's interpretation is reasonable, it is not the most reasonable. SLS, therefore, asserts that should the court require extrinsic evidence to resolve the ambiguity of

**Memorandum Opinion and Order – Page 16**

Section 8.2(a), the extrinsic evidence of the parties' negotiations evidence their intentions, beyond dispute, that the language of Section 8.2(a) specifically functioned to permit SLS to optionally terminate RTR's collection rights, allowing it to also terminate the entire Collection Agreement with respect to those Loans.

In support of its position, SLS contends that the draft, redline/blackline versions of the Collection Agreement exchanged by e-mail between the parties indicate that the parties contemplated that the final agreement would expressly authorize SLS to terminate the agreement without cause, subject to reasonable notice and reimbursement of advances. *Id.* at 15.  It highlights that, during negotiations, RTR initially requested that Section 8.2(a) include the following after "transferred to the Contractor by the Servicer": "(but specifically excluding all Charged Off Loans transferred to the Contractor by a prior servicer unless the Servicer is no longer the servicer of such Charged Off Loans)[.]"  *Id.* at 14.  SLS asserts that it informed RTR that it would not agree to a collection agreement that would not give it the discretion to terminate RTR's  collection rights for any or all of the loans covered by the Agreement.  Ultimately, this language was not included in the final Collection Agreement, which it contends demonstrates that the parties' negotiations and prior discussions negate RTR's attempt to limit the scope of loans defined under "Charged Off Loans."

SLS further contends that RTR's position that SLS may only unilaterally terminate RTR's collection rights under the for-cause termination provision in Section 8.3 "is absurd when considering the profound effects it would have on the ability of the owners of the Loans to sell their portfolio and the ability of SLS to transfer its master servicing rights." *Id.* at 20. It also notes that it is "not the owner of the Loans and [does] not have the right to transfer what [is] essentially a perpetual collection right to RTR, because SLS [does] not have a perpetual collection right." *Id*. Additionally, SLS asserts that, given RTR's rejection of the 2015 Non-Extension Notice and

reliance on the references to Sections 8.2 and 8.3 in Section 8.1(b), RTR essentially takes the position that all the provisions in the Agreement apply to the Charged Off Loans, except the term and termination provisions.

Despite RTR's assertions, SLS contends that Section 8.1(a) "was intended to grant either party the right to terminate the Agreement at the end of each term by giving written notice[.]" *Id.* at 21. With respect to Section 8.1(b), SLS asserts that this section "is a residual savings clause left over from the prior agreement between SLS and RTR, which provided for an automatic termination as opposed to an automatic extension of the one-year term"—the latter of which is memorialized in the Collection Agreement. *Id.* Thus, SLS asserts that "RTR's construction of § 8.1(b) would, for all practical purposes, render § 8.1(a) meaningless and result in SLS not having the right to terminate its relationship with RTR at the end of each one-year term—a construction that conflicts with the purpose of giving the Agreement a limited term period in the first place." *Id.* at 22.  Moreover, it contends that RTR's construction, that the Agreement's term-extension provision "does not apply to the [Charged Off] Loans—the only loans ever transferred under the Agreement—seeks to unwillingly wed SLS to RTR into perpetuity." *Id.*  Accordingly, for the reasons discussed above, SLS asks the court to deny summary judgment with respect to RTR's first request for declaratory judgment.

In its Reply, RTR asserts that "SLS places the cart before the horse[, and violates New York Law,] by providing an interpretation of Section 8.1 that relies upon parol evidence without first offering a plain reading interpretation of [the section] that is reasonable."  Pl.'s Reply to Mot. for Summ. J. 5.  It further asserts that, despite SLS's assertions, the language in Section 8.1(b), which sets forth RTR's survival rights, is not meaningless.  Specifically, it reasserts the following:

> The language of Section 8.1(b) on its face establishes that the Collection Agreement did not terminate after SLS sent RTR the 2015 Notice of Non-Extension. This is because Section 8.1(b) and its phrase "[n]otwithstanding the

**Memorandum Opinion and Order – Page 18**

foregoing" limits Section 8.1(a). Thus, despite the potential end of term under Section 8.1(a), RTR has a "surviv[al]" right that entitles it to "continue to perform" collections on those Charged Off Loans which RTR was collecting at the time the term otherwise would have ended, and RTR "shall continue" to collect these loans until "otherwise terminated" under the Collection Agreement. *See* RTR's MSJ Br. [Doc. 81] at 20; RTR MSJ App. [Doc 82] 5-6, 27.

RTR's interpretation constitutes the plain reading of the very language the parties chose to use. It is consistent with Section 2.2 of the Collection Agreement, which provides that RTR "shall continue collecting such Charged Off Loan throughout the Term unless such Charged Off Loan is removed as provided in Section 8.2 or 8.3," as well as the definition of "Term" in Section 1.20, which refers to Section 8.1, not 8.1(a) alone.

*Id.* at 6. By reading Section 2.2 in conjunction with Section 8.1(b), RTR contends that SLS's interpretation is not reasonable as a matter of law and that the law favors its construction of the Collection Agreement as a whole.

With respect to SLS's reliance on Section 8.2(a), RTR asserts that the court "should strike and disregard SLS's Section 8.2(a) optional termination argument as an improper, last-minute attempt to avoid summary judgment." Specifically, it notes that SLS did not raise Section 8.2(a) as a basis for relief, or as a defense, in its Answer and Counterclaim and, thus, any reliance on Section 8.2(a) is waived. *Id.* at 9. It also highlights that there is no request for summary judgment based on Section 8.2(a)'s optional termination provision before the court, and that, instead, the parties' summary judgment motions solely concern the issue of termination related to the 2015 Notice of Non-Extension, which was based upon Section 8.1(a). Moreover, RTR asserts that SLS's attempt to optionally terminate in the 2013 Termination Notice only related to a portion of the Charged Off Loans, and that SLS presents no evidence identifying those loans, leaving the court to guess. Accordingly, RTR asserts that any analysis of Section 8.2(a) is immaterial to the court's determination whether the 2015 Non-Extension Notice terminated the Collection Agreement and RTR's collection rights; therefore, it asserts that SLS's reliance on this provision is a distraction that the court should ignore.

If the court is inclined to consider the applicability of Section 8.2(a), RTR asserts that this section is not ambiguous as SLS contends because: (1) SLS fails to provide "a plain language interpretation of Section 8.2(a) that ascribes any meaning to the phrase 'transferred to the Contractor by the Servicerbrian[sic]'"; (2) the only reading of Section 8.2(a) that makes sense is that "the only Charged Off Loans that qualify for optional termination are those that are 'transferred to [RTR] by [SLS].'"; and (3) SLS's assertion that it transferred the Charged Off Loans previously serviced by Bank of America lacks merit.

Alternatively, RTR asserts that parol evidence, if considered, and its reliance on comparisons between the Collection Agreement at issue here and the CIFG Agreement that was used as a starting point for the Agreement in this action, also support its interpretation of Section 8.2(a).  Thus, it contends that, for the reasons discussed, the court should grant summary judgment on its first request for declaratory judgment and hold that the 2015 Non-Extension Notice pursuant to Section 8.1(a) does not require it to transfer any Charged Off Loans to SLS for collection.

### b.    Analysis

As an initial matter, the court must first determine whether, as a matter of law, the 2015 Non-Extension Notice effectively ended the Term of the Collection Agreement pursuant to Section 8.1(a).  In doing so, the court determines that this provision unambiguously permits either party to deliver unilaterally written notice of its election not to extend the Term of the Agreement so long as the notice is given at least thirty days before the end of the Term. In this case, SLS sent RTR, by hand delivery and overnight delivery, the 2015 Notice of Non-Extension on December 31, 2015—31 days before the expiration of the one-year renewable term, which ended the terms of the Collection Agreement on January 31, 2016. As the evidence shows, SLS gave timely notice of its election not to renew the Extension Term. RTR also acknowledges that SLS's 2015 Notice could effectively end the Extension Term of the Collection Agreement. Thus, the court determines that

the 2015 Non-Extension Notice effectively ended the Term of the Collection Agreement, effective January 31, 2016, pursuant to Section 8.1(a) as a matter of law.

The narrow issue in dispute, however, is whether the termination of the Collection Agreement pursuant to Section 8.1(a) terminates RTR's collection rights and requires it to transfer the Charged Off Loans at issue, as requested by SLS in the 2015 Non-Extension Notice. The court agrees with RTR that the meaning and effect of Section 8.1(a) cannot be read without reference to Section 8.1(b), as 8.1(b) begins with "notwithstanding the foregoing"—"foregoing" being a clear reference to 8.1(a)—and, by its plain terms, clearly indicates that subsection (b) functions to qualify subsection (a). Therefore, whether SLS had the authority under Section 8.1(a) to *both* terminate the extended term of the Collection Agreement *and* demand RTR to transfer the Charged Off Loans requires consideration of the meaning and effect of 8.1(b).

With respect to Section 8.1(b), RTR argues that, under this provision, it has a "survival right entitling it to continue to perform collections on those Charged Off Loans which RTR collected at the time the term otherwise would have ended, and that RTR shall continue to collect even after the term ends until otherwise terminated under the Collection Agreement." Pl.'s Mot. for Summ. J., Doc. 81 at 29-30. It further asserts that SLS's right to terminate unilaterally its collection rights under Section 8.2(a) is limited to Charged Off Loans that it transferred to RTR— not those transferred by Bank of America, the Prior Servicer, to RTR—as provided in Section 8.2(a). Thus, standing on the alleged limitation to termination in Section 8.2(a) and its attempt to create two separate categories of Loans, RTR asserts that its collection rights with respect to the Charged Off Loans at issue survive termination of the Agreement, because terminating the Agreement as a whole does not automatically terminate its collection rights with respect to the only Charged Off Loans at issue in this action—that is, those initially designated by Bank of America. It further supports this assertion based on the undisputed fact that SLS did not transfer

any new loans to RTR during their contractual relationship, and, therefore, it contends that SLS has no right to terminate unilaterally its collection rights with respect to the Charged Off Loans—loans it did not transfer and the only loans covered under the Agreement. The court disagrees for several reasons.

First, the court determines, as asserted by RTR, that SLS did not specifically invoke Section 8.2(a) as a basis for termination in the 2015 Non-Extension Notice or raise it as a basis for summary judgment. Accordingly, any assertion or request for relief based on Section 8.2(a), and, similarly, any requested relief based on the 2013 Termination Notice, is not properly before the court and, thus, is not a basis for summary judgment relief.[11]   The court further determines that, after considering the Agreement as a whole, it need not resolve any dispute regarding the phrase "transferred to the Contractor by the Servicer" in Section 8.2(a) in determining whether termination of the Term of the Collection Agreement pursuant to the 2015 Non-Extension Notice required RTR to transfer the Charged Off Loans to SLS, as the interpretation of Sections 8.1(a) and (b) does not depend on such resolution.

Moreover, Sections 8.1(a) and 8.2(a) provide separate, independent bases for terminating part or all of the Collection Agreement.   Specifically, Section 8.1(a) allows either party to unilaterally elect not to renew the Extension Term—terminating the Collection Agreement and all

---

[11] RTR objects to SLS's Response to its Summary Judgment Motion to the extent SLS requests relief related to the 2013 Termination Notice, which sought to terminate RTR's collection rights under Section 8.2(a) of the Collection Agreement with respect to certain Charged Off Loans.  As RTR highlights, neither party is requesting relief in its complaint or counterclaims pursuant to Section 8.2(a) and, thus, any request for such relief on summary judgment is untimely.  The court, therefore, **sustains** RTR's objection on this issue.

RTR also objects to SLS's assertion that 8.2(a) is ambiguous and moves to strike any arguments based on this defense. Pl.'s Obj. to Def.'s Resp. Summ. J. Materials, Doc. 101 at 7-9.  Specifically, it contends that SLS failed to raise this affirmative defense in its pleadings as required under Federal Rule of Civil Procedure 8(c), and, thus, this affirmative defense is waived. *Id.* The court agrees that any ambiguity defense is waived for failure to timely plead it. The court, however, is not considering the disputed language that SLS contends is ambiguous in its determination of the summary judgment motions.  It, therefore, **overrules as moot** RTR's objection and request to strike, to the extent it seeks to strike SLS's assertions that Section 8.2(a) is ambiguous.

**Memorandum Opinion and Order – Page 22**

rights therein—upon timely-written notice to the other party.  Section 8.2(a), on the other hand, permits either party to terminate unilaterally, and without cause, any or all of the Charged Off Loans transferred during the contractual relationship to RTR by SLS.[12]  In other words, invoking Section 8.2(a) would not necessarily end the entire Agreement if invoked to terminate only a subset of loans. Thus, any reliance on the ability to terminate optionally and unilaterally under 8.2(a) has no bearing whether termination under 8.1(a) requires transfer of the Charged Off Loans. Instead, the court shifts its focus to the interplay between Sections 8.1(a) and 8.1(b).

With respect to Section 8.1(b), the court finds RTR's interpretation of this section unavailing. The court agrees that Section 8.1(b) provides for certain rights and obligations of the Contractor and Servicer to "survive" "the expiration of the Term in accordance with Section 8.2 or Section 8.3." It disagrees, however, with RTR's interpretation of this provision, which essentially gives it an unrestricted right to collect the Charged Off Loans beyond termination of the Collection Agreement until one of six occurrences, beyond the control of SLS, "otherwise terminates" its right to collect. Instead, the court agrees with SLS's interpretation that the Section 8.1(b) refers to certain "rights and obligations of the Contractor and Servicer" that are being performed in accordance with Sections 8.2 and 8.3.

As SLS contends, the "rights and obligations of the Contractor and Servicer" are in reference to RTR's entitlement to recover reasonable out-of-pocket expenses and certain ancillary charges related to the transfer of Loans to SLS that are set forth in Sections 8.2 and 8.3—work that it would continue to perform after a non-extension of the term. Def.'s Mot. for Summ. J. Br., Doc. 77 at 21. Section 8.1(b) can reasonably be interpreted to read that the "rights and obligations of

---

[12] Despite RTR's assertions, and based on the plain reading of the Agreement, Section 8.2(b) of the Collection Agreement provides RTR the same ability to terminate unilaterally the Agreement only with respect to the Charged Off Loans transferred by SLS to RTR, as dictated by 8.2(a).

**Memorandum Opinion and Order – Page 23**

the Contractor and Servicer" are those "in accordance with Section 8.2 or Section 8.3." In other words, the only reasonable and unambiguous interpretation of 8.1(b) is that, notwithstanding a non-extension under 8.1(a), the parties must comply with certain obligations and will retain certain rights enumerated in Sections 8.2 and 8.3 related to the transfer of any or all Charged Off Loans. Thus, despite RTR's assertions, nothing in Section 8.1(b) provides that, upon termination of the entire Collection Agreement, it maintains the ability to collect the Charged Off Loans beyond the life of the Agreement—the Agreement that granted its ability to continue collecting on the Charged Off Loans at issue in the first place.[13]

RTR attempts to negate this interpretation by asserting that the language provided in Section 2.2 of the Collection Agreement supports its interpretation and application of Section 8.1(b). Such an interpretation of Section 2.2, however, "strain[s] the contract language beyond its reasonable and ordinary meaning." *Law Debenture Trust Co. of New York*, 595 F.3d at 467; *MPEG LA, LLC*, 86 N.Y.S.3d at 8.

Section 2.2 provides:

> 2.2    Contracting Periods. The Contractor shall commence collecting each Charged Off Loan as provided herein beginning on its Transfer Date and shall continue collecting such Charged Off Loan throughout the Term *unless such Charged Off Loan is removed as provided in Section 8.2 or 8.3.*

Pl.'s App., Doc. 82 at 26 (emphasis added). The italicized language is the crux of RTR's reliance. The phrase "unless such Charged Off Loan is removed as provided in Section 8.2 or 8.3," despite RTR's assertions, does not extend its collection rights beyond the Term of the Agreement. To the

---

[13] RTR also asserts that SLS's application of Section 8.1(b) of this Collection Agreement treats this Agreement differently than the identical provision in the CIFG Agreement. Specifically, it argues that SLS honored the survival of its collection rights under the CIFG Agreement despite challenging such with respect to the Agreement involved here. This argument, however, is unavailing. That the provisions are identical does not mean that the effect, when the entire agreement is considered, has the same effect and purpose. Thus, the court is not persuaded by the treatment of the CIFG Agreement, as it is not at issue here, and, moreover, the court determines that the language of 8.1(b) is unambiguous with respect to the Collection Agreement.

contrary, Section 2.2 grants collection rights to RTR for the duration of the Term unless the Agreement with respect to certain Charged Off Loans is terminated pursuant to 8.2 or 8.3 prior to the expiration of the Term.  Any other interpretation is unreasonable and does not reflect the plain language of the contract.  Notably, the term "Charged Off Loan" in Section 2.2 is used in the manner contemplated by Section 1.4, which defines it as each loan designated by the Servicer and the Prior Servicer under the Agreement.  It does not, despite RTR's assertions, create subcategories of Loans. Thus, considering the plain language of Section 2.2, RTR's rights to collect with respect to all Charged Off Loans only survive the Term of the Agreement unless terminated early, as provided in Section 2.2. Moreover, RTR's position that it can continue collecting the Charged Off Loans after the Collection Agreement is terminated is unreasonable, as its ability to collect is only granted based upon the parties' Agreement. Further, Section 2.2 establishes that its ability to collect the Charged Off Loans only continues through the Term.  Considering the unambiguous language of Section 2.2, and its determination that SLS terminated the Agreement under Section 8.1(a), the court concludes that RTR's collection rights were also terminated by SLS's 2015 Non-Extension Notice.[14]

For the reasons herein discussed, the court determines that SLS, pursuant to the unambiguous terms of Sections 2.2, and 8.1(a)-(b), was entitled to send the 2015 Non-Extension Notice, and that the Notice effectively ended the Term *and* validly terminated RTR's collection rights with respect to the Charged Off Loans.  Thus, SLS was entitled to require RTR to transfer any Charged Off Loans to it for collection in accordance with the terms of the Agreement. Accordingly, RTR's motion for summary judgment is **denied** with respect to its first request that

---

[14] The court also notes that terminating the term of an Agreement also terminates the parties' rights and obligations therein, unless a survival clause dictates otherwise.  Here, the Collection Agreement lists only four provisions (*See* Pl.'s App., Doc. 82 at 36) that survive the termination of the Agreement—none of which has any bearing on the court's determination of the summary judgment motions. Thus, the inapplicability of the surviving provisions further supports the court's ruling.

the court declare that the 2015 Non-Extension Notice does not require it to transfer any Charged Off Loans to SLS for collection.

### 2. RTR's Second Request for Declaratory Judgment Relating to Whether the 2015 Non-Extension Notice Is Null, Void, and Lacks Effect

In support of its argument that the 2015 Non-Extension Notice did not terminate its collection rights under the Agreement, RTR alternatively argues that the Notice is null, void, and of no force or effect because SLS's position that it could unilaterally terminate RTR pursuant to Section 8.1(a) "contradicts the unambiguous terms of the Collection Agreement." Pl.'s Mot. for Summ. J., Doc. 81 at 32. For the reasons set forth in Section III(A)(1) of this opinion, determining that the Notice did not contradict the relevant termination provisions of the Collection Agreement, the court **denies** RTR's motion with respect to its second request for declaratory judgment on this basis.

As a second ground for its request that the court nullify the Notice, RTR argues that SLS failed to follow certain prerequisites, pursuant to the CW HELOC Special Servicing Agreement ("CW HELOC Agreement") between SLS and Assured, the bond insurer, prior to sending RTR the notice of termination for the Charged Off Loans. According to RTR, under the CW HELOC Agreement, SLS "was required to take the following steps before sending the 2015 SLS Notice of Non-Renewal: (1) obtain Assured's written consent to the alleged termination at dispute in this case; and (2) obtain RTR's agreement with respect to the terms of the CW HELOC Special Servicing Agreement between SLS and Assured." Pl.'s Mot. for Summ. J. Br., Doc. 81 at 33; *see also* Pl.'s App., Doc. 82-2 at 28-29. RTR argues that "SLS failed to notify Assured that it was attempting to end the term of the Collection Agreement until the day of or days after sending the 2015 SLS Non-Extension Notice to RTR," and "SLS considered notification to Assured . . . as no more than a 'courtesy,' rather than as something requiring Assured's prior written consent." *Id.*

RTR further argues that SLS did not "obtain RTR's agreement with respect to the terms of the CW HELOC Special Servicing Agreement." *Id*. Accordingly, RTR requests that the court declare that the 2015 Non-Extension Notice is "invalid, prohibited under its contract with Assured, and lacks force and effect." *Id*. at 34.

RTR's assertion is, in essence, an attempt to enforce the terms of the CW HELOC Agreement and to use that agreement to nullify the 2015 Non-Extension Notice on a technicality. Although SLS does not address RTR's argument in its Response, the court rejects this argument as legally unsound. RTR is not a party to the CW HELOC Agreement, and, accordingly does not have standing to enforce its provisions. "[A] third party may sue as a beneficiary on a contract made for his benefit." *Crown Wisteria, Inc. v. F.G.F. Enterprises Corp.*, 562 N.Y.S.2d 616, 618 (1990). The third party asserting such rights, however, must show that the contract was intended to benefit it, and, "absent such intent, the third party is merely an incidental beneficiary with no right to enforce the particular contract[.]" *Id.* at 618-19. Here, RTR does not assert or set forth evidence that it is a third-party beneficiary to the contract, or that the CW HELOC Agreement was intended to benefit it. *Id.*; *see also United Int'l Holdings, Inc. v Wharf (Holdings) Ltd.*, 988 F. Supp. 367, 371 (S.D.N.Y. 1997) (citation omitted)). Without the sufficient showing, RTR has failed to demonstrate that it is a third-party beneficiary entitled to enforce the terms of the CW HELOC Agreement, and, thus, it has no standing to enforce it in this action. Moreover, RTR points to no provision in the Collection Agreement that requires SLS to obtain Assured's consent prior to termination of the Collection Agreement, or that requires any other prerequisites to termination as set forth in the CW HELOC Agreement. The court, therefore, **denies** RTR's motion for summary judgment with respect to its second request for declaratory relief, insofar as it requests the court to declare that the 2015 Non-Extension Notice was void, null, and of no effect because SLS failed to follow the preliminary procedures set forth in the CW HELOC Agreement.

### 3. RTR's Third Request for Declaratory Relief Relating to Whether It Has the Exclusive Right to Collect Proceeds Relating to Charged Off Loans, Including Pursuing Foreclosure Sales

RTR argues that the plain language of the Collection Agreement unambiguously authorizes it to serve as the sole and exclusive collector of proceeds, and likewise authorizes RTR to seek foreclosure as a means of authorized collection of the Charged Off Loans. In light of RTR's construction of its exclusive authority, RTR argues that its right to conduct foreclosure sales is not subject to SLS's consent, and, therefore, SLS was not authorized to instruct RTR not to pursue any foreclosure proceedings. Pl.'s Mot. for Summ. J. Br., Doc. 81 at 36-37. Notably, the conduct underlying this request for declaratory relief occurred after the 2015 Non-Extension Notice was sent to RTR, and, more importantly, after the term of the Collection Agreement expired on January 31, 2016.  *See* Pl.'s App. Doc. 82-2 at 11 ("Skidmore E-Mail"). Thus, while RTR *may* have had exclusive authority to collect proceeds and conduct foreclosures in connection with the Charged Off Loans, [15] any such authority has been terminated pursuant to SLS's valid non-extension of the Collection Agreement and its termination of RTR's collection rights.  Moreover, any alleged interference of this right was harmless, as the termination of the Collection Agreement also terminated RTR's right to collect. The court, therefore, determines, in light of its ruling in Section III(A)(1) of this opinion, that this request for declaratory relief is moot. Accordingly, the court **denies as moot** RTR's motion for summary judgment on its third request for declaratory relief.

---

[15] The court notes, that, despite RTR's assertions and language provided in the Collection Agreement, the Skidmore E-Mail suggests that the parties may have been conducting business in a different manner.  Specifically, the initial e-mail from RTR to SLS sought SLS's approval to foreclose, which contradicts RTR's assertion that it did not need SLS's consent to move forward.  Nevertheless, its rights under the Collection Agreement, including the right to collect proceeds, was terminated prior to the Skidmore E-Mail, and, thus, RTR is not entitled to the requested relief based on the court's ruling in Section III(A)(1) of this opinion.

**B.     RTR's Motion for Summary Judgment on Its Breach of Contract Claim**

RTR seeks summary judgment on its breach of contract claim "solely for the portion addressing SLS's breach by instructing [it] to transfer the Charged Off Loans to SLS" and "not on the portion of its breach of contract claim based upon SLS instructing [it] not to pursue foreclosures." Pl.'s Mot. for Summ. J. Br., Doc. 81 at 23 n.4. It contends that SLS "breached the Collection Agreement by demanding that RTR transfer to SLS the Charged Off Loans originally designated and transferred to RTR for collection by the Prior Servicer, in contravention of Section 8.1." *Id.* at 37. It further contends that, as a proximate result of SLS's breach, it "has suffered damages in the form of recovery of the reasonable attorneys' fees and expenses that it has incurred in prosecuting this lawsuit and in defending against SLS's counterclaim." *Id.* at 37-38.

For the reasons stated in Section III(A)(1) of this opinion, the court determines that SLS, in sending the 2015 Non-Extension Notice, and acting pursuant to the unambiguous terms of Sections 8.1(a)-(b), terminated the contract term and RTR's collection rights. Thus, SLS was entitled to demand transfer to it of the Charged Off Loans at issue.  Accordingly, as the court has determined that SLS was acting within its contractual rights, RTR is not entitled to judgment as a matter of law that SLS breached these provisions by instructing it to transfer the Charged Off Loans. The court, therefore, **denies** RTR's request for summary judgment on its breach of contract claim with respect to this issue.

**C.     RTR's Motion for Summary Judgment on SLS's Counterclaims Against It**

RTR seeks summary judgment on SLS's counterclaims for declaratory relief and breach of contract for the same reasons set forth in its summary judgment request with respect to its claims for declaratory judgment and breach of contract. In its Counterclaims, SLS alleges that RTR breached the contract by failing to transfer the Charged Off Loans pursuant to the Collection Agreement once the Agreement was terminated, and seeks a declaratory judgment that the 2015

Non-Extension Notice terminated the Agreement, effective January 31, 2016.  Def.'s Answer, Doc. 63 at 10-12.  RTR argues that SLS is not entitled to a declaratory judgment that the 2015 Non-Extension Notice terminated the Collection Agreement because Section 8.1(b) provides a survival right enabling RTR to continue to perform collections on the Charged Off Loans. Pl.'s Mot. for Summ. J. Br., Doc. 81 at 42. It further contends that SLS's breach of contract claim similarly fails because "[i]t is impossible for [it] to have breached the Collection Agreement by refusing to cease its collection activities after SLS tendered its 2015 Non-Extension, because such notice did *not* 'terminate' the Collection Agreement, but at most ended the 'Term' subject to RTR's survival rights to continue collecting the Charged Off Loans[.]" *Id.* at 43.

As the court has determined, for the reasons set forth in Section III(A)(1) of this opinion, that the 2015 Non-Extension Notice terminated the Collection Agreement and RTR's collection rights as a matter of law, RTR is not entitled to judgment as a matter of law with respect to SLS's counterclaims for declaratory relief and breach of contract for those same reasons. The court, therefore, **denies** RTR's summary judgment motion on this basis as well.

## IV.   SLS's Motion for Partial Summary Judgment

SLS asks the court to enter partial summary judgment in its favor that: (1) dismisses with prejudice RTR's first and second requests for declaratory relief, pertaining to its 2015 non-extension of the Collection Agreement; and (2) grants its request for declaratory relief, namely that its 2015 Non-Extension Notice was effective. SLS's Motion for Partial Summary Judgment (Doc. 76) is supported by the same arguments set forth in its Response to RTR's Motion for Summary Judgment (Doc. 92).

Thus, in accordance with the court's denial of RTR's Motion for Summary Judgment and its analysis set forth in Section III(A)(1), determining that the 2015 Non-Extension Notice effectively ended the term of the Collection Agreement on January 31, 2016, and terminated

RTR's collection rights for the Charged Off Loans, the court **grants** SLS's Motion for Partial Summary Judgment and **dismisses with prejudice** RTR's first and second requests for declaratory relief that:

> (1) The 2015 SLS Non-Extension Notice pursuant to Section 8.1(a) does not require RTR to transfer any Charged Off Loans to SLS for collection; [and]
>
> (2) The 2015 SLS Non-Extension Notice, to the extent it seeks transfer of the Charged Off Loans to SLS for collection, contradicts the terms and provisions of the Collection Agreement and, therefore, is null, void, and of no force or effect[.]

Pl.'s Mot. for Summ. J. Br., Doc. 81 at 22-23; *see also* Pl.'s First Am. Compl. 12. Additionally, for the same reasons already discussed, the court **grants** SLS's counterclaim for declaratory relief and **declares** that the 2015 Non-Extension Notice effectively terminated the Collection Agreement, effective January 31, 2016.

## V.      Parties' Objections to Summary Judgment Evidence

Both parties have filed objections to the opposing side's summary judgment evidence. The court has not considered any evidence that is not competent summary judgment evidence under case law, Federal Rule of Civil Procedure 56, or applicable statutes, and has disregarded any such evidence when necessary. With the exception of the objections specifically discussed above, the court finds that it reaches the same conclusions regardless of whether it considers the disputed evidence or arguments. Therefore, the remaining objections asserted by the parties are all **overruled as moot**.

## VI.     Conclusion

For the reasons herein stated, the court determines as a matter of law that the 2015 Non-Extension Agreement effectively ended the extended term of the Collection Agreement, effective January 31, 2016, and terminated RTR's collection rights with respect to the Charged Off Loans. The court, therefore, **denies** RTR's Motion for Summary Judgment (Doc. 80); **grants** SLS's

Motion for Partial Summary Judgment (Doc. 76); and **sustains in part** and **overrules in part** all objections for the reasons herein discussed. *See* Docs. 92, 93, 101, 105.  Accordingly, the court **declares** that the 2015 Non-Extension Notice terminated the Collection Agreement, effective January 31, 2016, and **dismisses with prejudice** RTR's first and second requests for declaratory relief as set forth in its First Amended Complaint, as well as its breach of contract claim to the extent it is based on RTR's allegation that SLS breached the Collection Agreement by instructing it to transfer the Charged Off Loans to SLS in the 2015 Non-Extension Notice. The claims that remain for trial are: (1) RTR's third request for declaratory relief, which seeks a declaration that it had the exclusive right to collect proceeds under the Agreement, including through litigation and foreclosure actions; (2) RTR's breach of contract claim based on its allegation that SLS wrongfully prohibited RTR from collecting on and initiating foreclosure proceedings with respect to the Charged Off Loans; and (3) SLS's breach of contract counterclaim.

**Given the court's rulings, which have consumed an inordinate amount of scarce judicial resources, and the complexity of this case, it strongly encourages the parties to consider an expeditious resolution of the pending claims and counterclaim. As for the remaining issues, this is not an open-and-shut case for either side.  The court directs the parties to inform it in writing no later than February 5, 2021, whether they can resolve the remaining claims in this action without further court involvement. If no resolution is achieved, the court will issue its Third Amended Scheduling Order, setting this case for trial in the spring of 2022.**

**It is so ordered** this 15th day of January, 2021.

Sam A. Lindsay
United States District Judge